STEUBEN GENERAL TERM, September, 1849.   *Maynard,*
*Welles, and Selden,* Justices.

## SHELDON *vs.* WRIGHT.

Under the section of the act of April 18, 1813, relative to the court of probates, &c, providing that no administration shall in any case be granted until satisfactory proof shall be made, before the surrogate, that the decedent is dead, and died intestate, it is not sufficient for the applicant for letters of administration to set forth the facts in a petition, and swear that the matters therein stated are true, *to the best of his knowledge and belief;* without alledging any knowledge, or means of knowledge, or reasons for his belief.

But the objection is not available as against the jurisdiction of the surrogate, so as to render the grant of administration void.  The evidence is at least colorable; and although objectionable as legal evidence its reception is merely error, and can only be objected to, on appeal.

Neither will the objection that no citation to the next of kin of the intestate was issued by the surrogate, go to the question of jurisdiction.

Under the 23d and 31st sections of the statute, upon an application to the surrogate for an order to sell the real estate of the decedent for the payment of debts, guardians for the infant heirs must be appointed, at least six weeks previous to the day for showing cause.

The ordinary presumption that a public officer has done his duty should never be allowed, to sustain a vital jurisdictional fact.  But where the fact that on an application to a surrogate for an order to sell the real estate of a decedent, a guardian was appointed for the infant heirs, is made out independently, and without the aid of such presumption, the question being only as to the time when it was done, and the proof showing it might have been made in proper time, the law will presume that the appointment was made the requisite time before the parties in interest were, by the order, to show cause against the sale.

In order to give the surrogate jurisdiction of the persons of the heirs, upon such an application, the provisions of the statute, requiring the order to show cause to be published for four weeks successively in two or more newspapers, must be strictly complied with.

And the fact that the publication required by the statute was duly made, is one which a party claiming title under a sale made in pursuance of the order of the surrogate is bound affirmatively to establish.

The direction of the statute, that the order to show cause shall be "immediately" published, is to be understood as only requiring the publication to be four successive weeks before the day for showing cause; and that the order shall be published as soon as conveniently may be.

The act does not require the first of the four successive publications to be four weeks before the day for showing cause.  The requirement is satisfied by four successive weekly publications previous to the day.

Sheldon *v.* Wright.

What is a sufficient compliance with the provisions of the statute requiring an account of the personal estate, and debts, of the decedent, to be presented to the surrogate, signed and verified by the administrator.

Where, after a surrogate has made an order for the sale of all the real estate of the decedent, describing it by metes and bounds, but before any action has been had, under such order, the administrator discovers that the boundaries mentioned in the order do not comprise the whole of the real estate, the surrogate may, upon the petition of the administrator, vacate such order of sale, and make a new order for the sale of all the real estate of the decedent, as well that embraced in the former order, as the portion not included therein.

The omission of the administrator to verify his report of sale, does not affect the jurisdiction of the surrogate; that being a mere matter of practice.

Under the act of 1819, requiring that deeds of land sold by order of a surrogate shall set forth, at large, the orders for the sale, and confirming the sale, and directing the conveyance, it is not necessary to set forth the orders with literal precision. All that the spirit of the act requires is that the deed shall contain the substance of the orders. A mistake which is merely clerical, and can not mislead—such as a transposition of dates—will not vitiate the deed.

EJECTMENT, tried at the Cayuga circuit in April, 1848, before SILL, justice. The plaintiff claimed to recover one undivided fourth part of certain premises, being part of lot No. 78 in the town of Brutus, in the county of Cayuga. The cause was tried, by consent of parties, before the justice without a jury.

Upon the trial the defendant's counsel admitted that Aaron B. Sheldon, of the town of Brutus, died in the month of February, 1826, seised of the premises in question, leaving four children, of whom the plaintiff was one, who were his only heirs at law. That said children were all infants under the age of 21 years, the plaintiff being the oldest, and becoming 21 years old on the 27th day of April, 1827. That at the time of the commencement of this suit the defendant was in possession of said premises, claiming the entire title to the whole, and had been so in possession under the administrator's deed hereinafter mentioned, from about the first of April, 1827; whereupon the plaintiff rested. The defendant relied upon title through a deed from Sylvester Willard, as administrator of &c. of the said A. B. Sheldon deceased, to him the said defendant executed, in pursuance of an order of the surrogate of Cayuga county. A verdict was ordered in favor of the plaintiff, subject to the opinion of the supreme court.

. *William Porter*, for the plaintiff.

*John Porter*, for the defendant.

*By the Court*, WELLES, J.   Various objections were taken by the plaintiff's counsel to the proceedings before the surrogate, which will be considered in their order.   The plaintiff, on the trial, after the proofs were closed, moved for a verdict and judgment in his favor on the following grounds :

I. That the letters of administration granted by the surrogate to Sylvester Willard were void, because 1st. There was no proof before the surrogate of the death or intestacy of said Aaron B. Sheldon ; and 2d. That no citation was issued to the next of kin of the deceased, prior to the granting of the said letters. The fact of the death of Aaron B. Sheldon, in February, 1826, and that he was a resident of the county of Cayuga at the time of his death, is admitted in the case.   The objection is that such fact, and the fact of intestacy were not legally proved before the surrogate upon the application for letters of administration.   The proof consists of the statement of the facts in the petition, which is verified by the oath of the petitioner, in which he states that " the material facts in the preceding petition by him subscribed are true, *to the best of his knowledge and belief.*" The petition also states that the deceased left no last will and testament, that the petitioner had been able to discover or had heard.

The statute in force when these proceedings were had (1 *R. L.* 445, § 5) provides " that no administration shall in any case be granted until satisfactory proof be made before the judge of the court of probates, or surrogate, to whom application for that purpose shall be made, that the person of whose estate administration is claimed, is dead, and died intestate."   If this question was before the court on appeal from the decision of the surrogate in granting the letters of administration, I think we should hold the proceeding irregular ; as there does not seem to be any legal proof of the facts required by the statute.   The affidavit seems to be insufficient, as a verification of the petition.   It

VOL. VII.          6

merely states the material facts to be true, *according to the best of the petitioner's knowledge and belief.* It does not alledge any knowledge or means of knowledge, or reasons for the belief, &c. It was not legal evidence of any of the facts contained in the petition. (*Brown* v. *Hinchman*, 9 *John.* 75. *Vosburgh* v. *Welsh*, 11 *John.* 175. *Tallman* v. *Bigelow*, 10 *Wend.* 420. 2 *Cowen & Hill's Notes*, § 864. *Matter of Bliss*, 7 *Hill*, 187, *and cases there cited.*)

But the objection is not available as against the jurisdiction of the surrogate, so as to render the grant of administration void. The evidence contained in the affidavit was at least colorable, and although it was objectionable as legal evidence it was merely error, and could only be objected to on appeal. The 10th section of the statute above referred to requires the surrogate, upon granting administration, to take from the administrator a bond, &c. with two or more competent sureties, &c. In *Bloom* v. *Burdick*, (1 *Hill*, 130,) the surrogate had taken only one surety, and the court held the omission to take a proper bond, an error to be corrected on appeal, and not a defect of jurisdiction which would render the whole proceeding void. In *Tallman* v. *Bigelow*, above cited, which was a certiorari to a justice of the peace, it appeared that the suit before the justice was by attachment issued upon affidavits stating the facts which were relied upon to entitle the party to an attachment, upon information and belief only. The court reversed the judgment, holding the affidavits defective, but stating at the same time that "there probably was sufficient to protect the justice and all others acting under the judgment, until its reversal." Unless the affidavits were sufficient to give the justice jurisdiction there would be no protection to him. In *Vosburgh* v. *Welsh*, also above cited, Thompson, J. says, "A mere error in judgment as to the legality of the proof offered, would not make the magistrate a trespasser by issuing the attachment. But such proof, in order to give jurisdiction to the justice, ought at least to be colorable."

With respect to the objection that no citation to the intestate's next of kin was issued by the surrogate, in pursuance of the

Sheldon *v.* Wright.

6th section of the act, I incline to think it should be disposed of in like manner with the one relating to the proof of the death and intestacy of the decedent. I think it would have been a good objection on appeal, but that it does not go to the question of jurisdiction. The case shows that the widow of the deceased filed with the surrogate a renunciation of her right to letters of administration, with a recommendation for the appointment of Willard ; and the case shows the children were all infants. (*Perley* v. *Sands,* 3 *Edw. Ch. Rep.* 327. *Flinn* v. *Chase,* 4 *Denio,* 90.)

II. The next objection, taken at the trial, to the proceedings before the surrogate is, that a guardian for the infant heirs was not appointed until some days subsequent to the granting of the order to show cause why the sale should not take place. The petition for the sale bore date and was filed with the surrogate on the 6th day of September, 1826, upon which the order to show cause was on the same day made and entered, by which all persons interested, &c. were required to show cause, &c. before the surrogate at his office in the town of Ledyard in the county of Cayuga, on the 19th of October then next, at 10 A. M. The order appointing a guardian for the infants bears date in September, 1826, but the day of the month is left in blank. The caption is in this form : " At a surrogate's court held in and for the county of Cayuga at the surrogate's office in the town of Ledyard, on the       day of September, 1826." The 31st section of the act requires that in all cases where a petition shall be presented for the sale of the real estate of the deceased, and one or more of the devisees or heirs shall be infants, a discreet and substantial freeholder shall be appointed a guardian for such infants, for the sole purpose of appearing and taking care of their interests in such proceedings. It may be a question as to what time in the course of the proceedings to sell the real estate, the appointment of a guardian for the infants must take place. The 23d section of the act provides that the order to show cause, &c. shall direct all persons, &c. to appear before him at a certain day and place to be specified, not less than six nor more than ten weeks after the day of making the

order, to show cause, &c. which order shall immediately thereafter be published for four weeks successively in two public newspapers, &c. I incline to think the appointment should be made at least six weeks before the day of showing cause mentioned in the order; otherwise the infant heirs could not have the full benefit of the notice which the act intended to give them. If not, what time should be deemed sufficient? If less than six weeks, I see not why one day prior to the order of sale would not satisfy the statute. The heirs have a deeper interest to be looked after than any other persons. Indeed, they and the creditors are about the only persons who have any interest in the proceedings. It is in the nature of an issue between them. It is all important that the heirs be represented when the order for sale is applied for. And as personal notice is not required to be given, such of the heirs as are infants should be placed on an equal footing with others interested, by having a guardian to take charge of their interests for the same length of time before the day appointed; otherwise the guardian will not stand an equal chance of seeing the published order, without which the order to show cause would be to them, practically, a nullity. The next inquiry in this connection is, when was the appointment of guardian in fact made? All that the case shows on the subject is that it was in the month of September, 1826. No parol or other evidence was given tending to prove what day of the month it was done, nor how long before the 19th day of October, (the day of showing cause.) All that can be collected on the subject is that it was on or after the 6th day of September, and before the 1st day of October. If it was the 30th day of September, it was less than three weeks. If we suppose it to have been done on the 6th day of September, which is the earliest possible day the evidence will admit of, then it will appear to have been precisely six weeks and one day. Upon the whole, I am prepared to hold at this point in the case, that the ordinary presumption that a public officer has done his duty, should apply. I do not think that such presumption alone should ever be allowed to sustain a vital jurisdictional fact, such as I regard this to be; but inasmuch as the fact that

Sheldon *v.* Wright.

a guardian was appointed is made out independently, and without the aid of such presumption, as the question is only as to the time when it was done, and as the proof shows it might have been done in proper time, the law will presume that the appointment was made the requisite time before the parties in interest were, by the order to show cause, &c. (*Jackson ex dem. McFail and others* v. *Crawford*, 12 *Wend.* 533. *Ford* v. *Walsworth*, 19 *Id.* 334. *Bloom* v. *Burdick*, 1 *Hill*, 136.)

III. The next objection was that the order was not published four weeks successively, prior to the day therein mentioned for showing cause, in two of the public newspapers printed in this state. The order was published in the "*Free Press*," a newspaper printed in Auburn, Cayuga county, once in each week for four weeks successively, commencing on the 20th day of September, 1826 ; and in the "Cayuga Patriot," printed in the same place, once in each week for the same number of weeks, commencing on the 27th day of September, 1826. The statute (1 *R. L.* 450, § 23) in directing the publication of the order, uses the following language, "which order shall immediately thereafter be published for four weeks successively in two or more of the public newspapers printed in this state, one of which shall be the paper, if any, published in the county where probate of any such will shall be had or administration granted," &c. I have no doubt whatever that it is essential, in order to give the surrogate jurisdiction of the persons of the heirs, that this provision of the statute should be strictly complied with. It is the only process to bring them into court, and without it they are without their day in court. And I think that notice for the full time required by the statute is equally indispensable ; that short notice would be as no notice. And I think it was a fact which the defendant in this case was bound affirmatively to establish. This was so held in the late case of *Corwin* v. *Merritt*, (3 *Barb. S. C. Rep.* 341.) I think, however, that the proof in this case clearly establishes a compliance with the law in this respect. 1st. With respect to the time of the first publication of the order, the statute is that the order shall be *immediately* published, &c. ; and it was contended upon the argument, that as the order was

made on the 6th of September, and the first publication in one of the newspapers not until the 27th, it was not *immediately* published.   In most cases it would be impossible to comply with the statute literally, if by the word "*immediately*" it is to be understood instantly, or upon the same day of making the order.   I think the statute only requires the publication to be four successive weeks before the day of showing cause, and that the only force which can be given to the word "immediately" is a direction that the order be published as soon as conveniently may be.   Any other construction would be impracticable.   It is claimed that the notice, so far as one of the papers was concerned, (the Cayuga Patriot,) was not published four weeks. That the first publication, which was on the 27th day of September, was less than four weeks before the 19th day of October, when the parties were required to show cause, &c.   This, as a matter of fact, will be seen, upon a computation of the time, to be true.   But I do not understand the act to require the first of the four successive publications to be four weeks before the day of showing cause.   The requirement is satisfied by four successive weekly publications before the day.   That was done in this case.   That was the practical construction of the provision of the insolvent laws requiring notice to creditors, &c. to be published in one class of cases six weeks, and in another ten weeks.

IV.   The next objection taken by the plaintiff's counsel at the trial, to the proceedings before the surrogate, was as follows: "That an account of the personal estate and debts of the said Aaron B. Sheldon, at the time of the application by said Willard, was not presented to the said surrogate, or filed in his office, and if so, that such account was not verified."   The case shows that on the 6th day of September, 1826, the administrator presented to the surrogate a petition duly verified, for the sale of the real estate of the deceased, containing statements which, by the statute, would entitle him to an order to show cause, &c. referring to an account subjoined, of the personal estate of the deceased. The account is set forth at length in the case, and consists of a list of the creditors of the deceased, with the amount due to

them respectively, amounting in the aggregate to $1665,76, be-
sides interest; a statement of the debts due the estate, with the
name of each debtor, and the amount due from them respect-
ively, amounting nominally in the aggregate to $87,23, with a
statement that he, the administrator, considered them all bad,
excepting a demand against one Finch of $37, which he con-
sidered doubtful. Annexed to the account is a statement as
follows: " An account of moneys received by Sylvester Willard,
the administrator, on account of Aaron B. Sheldon's estate.
The amount of personal property as appraised in the inventory,
is $245,11, exclusive of what was reserved for the benefit of
the widow, to wit, $87,63, which personal property was sold at
public auction according to law. The amount of sales in cash,
was  -   -   -   -   -   -   -   -   - $ 62,25
The amount of the balance for which notes were
    taken, and which I consider good, was   -   -   285,58

                                                  $347,83"

The case also shows that on the said sixth day of September,
1826, the administrator duly filed with the surrogate an inven-
tory and account of the goods, chattels and credits of the de-
ceased, duly verified by the administrator, accompanied by the
usual affidavit of the appraisers. It appeared by this inventory
that the aggregate value of the personal property, exclusive of
that set apart for the use of the family of the deceased, was
$245,11, and inclusive of that so set apart, was $341,74. I
have no doubt but this account was a full compliance with the
statute. It presented a plain exposition of the condition of the
estate, and exhibited a prima facie case of the necessity for a
resort to the real estate for the payment of the debts. It con-
tained a detailed statement of the debts due from the estate. It
then accounted for the personal estate which had come to the
hands of the administrator, in general terms, it is true, but by
reference to the inventory which was on file with the surrogate.
That, in my opinion, was quite as well as to recapitulate the
items from the inventory. It was unnecessary to give a de-
tailed statement of the notes taken by the administrator upon

the sale of the personal property. No useful purpose could be answered by it, as they were all good, and the administrator was willing, undoubtedly, to have them treated, for the purposes of the application he was then making, as so much money in his hands.

It is objected that the account of debts due from the estate, did not show their character. The act does not require this, in terms. Its language is, that the administrator or executor shall "make a just and true account of the said personal estate and debts, so far as he or she can discover the same," &c. If any person interested, should desire to know the character of the debts, with a view to ascertain whether they were fictitious or genuine, or for any other purpose, there is nothing to hinder his examining the administrator or creditors under oath touching the subject.

It is also objected that the account of the personal estate and debts is not signed or verified by the administrator. In the first place, the act does not direct the account to be signed or verified; and in the next place, it was in fact, annexed to the petition which was duly verified, and contained a reference to the account in these words; "that said account is herewith ready to be delivered as this court may direct." There was no other account in the case to which the petition could have had reference.

V. and VI. This case shows that on the 8th day of December, 1826, the surrogate made an order for the sale of the whole of the real estate whereof the said Aaron B. Sheldon died seised, thereinafter mentioned and set forth, and the order proceeded to describe the same particularly, being seventy acres of land. That on the 8th day of January, 1827, the administrator presented to the surrogate a petition, representing that since the order of sale of the 8th of December, he had discovered that the boundaries mentioned in that order, of the land of the decedent, and which were supposed to contain all the real estate of which he died seised, did not comprise the whole of such real estate, and praying that the order of sale so made might be vacated, and a new order granted for the sale of the whole of such real

estate. This last petition was duly verified and accompanied by an affidavit of another person tending to corroborate the statement of facts contained in the petition. The surrogate thereupon, on said 8th day of January, made another order reciting the order of the 8th of December, the discovery by the administrator of the other land owned by the deceased at the time of his death, that it appeared that no sale had yet been made of any part of the said real estate, and that it was requisite and necessary, in order to pay the debts of the deceased, that as well the lands and premises thereafter particularly described, as those mentioned and specified in the last mentioned order or decree should be sold, and ordered, adjudged and decreed that the administrator sell in the manner prescribed in the last mentioned order or decree, with respect to the land and premises therein described, the estate, right, title, &c. whereof the said Aaron B. Sheldon died seised, in and to all that certain piece or parcel of land, situate, &c. describing the same particularly, being twenty-four $\frac{92}{100}$ acres of land, being part of lot No. 78, in the town of Brutus, in the county of Cayuga. The plaintiff, at the trial, objected to these orders as follows: " That the said first order of sale was void for the foregoing, among other reasons." Also, "that the second order of sale was void, for the foregoing reasons, as well as the following, to wit ; it was entered or granted before any action was had on the first order to show cause with reference to it, and without any proper application being made, or any necessity appearing therefor." The validity of the objection to the first order of sale depends upon the objections made to the previous proceedings, which have been considered and overruled. With respect to the second, whatever may be said of its regularity, I think the surrogate had jurisdiction to make it. He intended in the first order, to direct a sale of the whole of the real estate of the deceased, and supposed he had done so. In the first order of sale, it is recited that no cause or objection was shown at the time and place specified in that order, why the whole of the said real estate, or a part thereof, should not be sold ; and that upon hearing and due examination of the allegations and proofs of

the administrator, it was found that the personal estate of the deceased was insufficient to pay his debts; that the whole of the personal estate had been applied towards the payment of said debts; and that it was requisite and necessary to sell the whole of his real estate for the payment of his debts; it was thereupon ordered, adjudged and decreed that the whole be sold, &c. I am aware that it may be said the surrogate should direct to be sold, only so much of the real estate as appears to him, upon examination, to be necessary for the payment of the debts; and that in that view, he should look at the amount of debts remaining unpaid, after all the personal estate has been applied, and upon the quantity and probable value of the real estate necessary to be sold for the purpose of paying the balance; and having done all this, the surrogate in the present case, ordered the first parcel of seventy acres to be sold, &c. And it was urged upon the argument at bar, that before an order could be made for the sale of other land, the power of the first order should have been exhausted; and that if a further sale should afterwards become necessary, an order for that purpose should be obtained in the same way as the first was procured. It is to be observed, that the first order adjudged a sale of all the real estate; and before any proceedings had been taken under that order, the second order was made, in which it was adjudged to be necessary to sell the other piece. In this, I think the surrogate acted within his powers, and if so, his acts can not be drawn in question, in this collateral way.

VII. The seventh objection made at the trial, by the plaintiff's counsel, was as follows: "That the report of sale was not verified, and does not show that the premises were sold between the hours of 9 A. M. and the setting of the sun, on the day of sale." The latter part of this objection, relating to the time of day, &c. was virtually abandoned upon the argument. With respect to the residue of this objection, it does not appear by the case that the administrator's report of the sale was verified. And the case expressly states that it was not. Neither the act of 1813, (1 *R. L.* 444,) nor the act of 1819, (*Ses. L. of* 1819, *p.* 214,) requires it to be verified. It strikes me it would have

been better practice to have had it done; but it was at most a matter of practice, and the omission certainly cannot be successfully urged as a jurisdictional objection to the proceedings of the surrogate. I am not aware what the practice usually was before the surrogate. If it was to dispense with the verification of the report in such cases, perhaps it was on the ground that the administrator, in making the report, acted under the oath of office which he took upon receiving the letters of administration.

VIII. The next objection was "that the order of confirmation was void for the foregoing reasons." The consideration of the previous several objections, of course disposes of this.

IX. The premises were sold by the administrator in pursuance of the orders of the surrogate, on the first day of March 1827, and were struck off to, and purchased by, the defendant for the sum of $1175. Upon the sale being reported, the surrogate, by an order dated March 20, 1827, confirmed the sale and directed that the administrator execute and deliver a deed of the premises to the defendant in pursuance of the sale. A deed was accordingly executed and delivered to the defendant on the 26th day of June 1827. This deed, in setting forth the first order of sale, states it to have been made on the 6th day of September 1826, (the true date being the 8th day of December of that year,) and in copying into the deed the recitals in this order, of the petition for such sale, it states that the petition was presented on the 8th day of December last past, (the true time of the presentation of that petition being the 6th of September 1826,) thus reversing the two dates. In other respects the order is correctly and truly set forth at large in the deed. The second order of sale and the order confirming the sale and directing the conveyance, are both correctly set forth at large in the deed. The objection taken at the trial was that the orders of sale were not set out at large in the deed.

The act of 1819, (*Laws of* 1819, *p.* 215 § 3,) requires that such conveyances shall set forth at large the orders directing the sales, and the orders confirming the sales and directing conveyances. In the case of *Rea and others* v. *McEachron*, (13

Sheldon *v.* Wright.

*Wend.* 465,) it was decided that the omission to have an order of confirmation &c. entered is fatal at law to the purchasers' title. And in the case of *Atkins and wife* v. *Kinnan,* (20 *Wend.* 241,) the omission to set forth these orders in the conveyance was held equally fatal. But I do not understand it to be necessary, under the statute, to set forth the orders with literal precision. The deed should contain the whole of their substance, and that, I think, is all the spirit of the act requires. (*Atkins and wife* v. *Kinnan, supra.*) In the present case the mistake complained of was merely clerical, and could mislead no one. It contained its own antidote. The mistake in the transposition of dates is at once apparent. In reciting the first order of sale, the deed must be regarded as speaking on the 26th day of June 1827, and saying that on the 6th day of September 1826, the surrogate made an order of sale founded upon a petition, &c. presented on the 8th day of December 1826, which is seen to be an absurdity. And by reference to the 2d order of sale, which is correctly set forth in the deed and truly and correctly recites the first, the mistake is made still more apparent and leaves no doubt of what the true reading of the first order must be ; or that the change of dates was the merest clerical error.

X. But supposing I am wrong in all this, and the deed of the 26th of June is inoperative for the reason alledged, the new deed from the administrator to the defendant, which the case shows was dated and delivered October 2d, 1847, in which all the necessary orders of the surrogate were set forth at large, is available to the defendant to heal the supposed defects in the first deed, and to vest the title to the premises in question in him. I can see no objection to giving this second deed full effect, on the supposition that the other was void, and to treat it as relating back to the time of sale, in analogy to deeds of sheriffs on sales under executions. (3 *Cowen,* 81.)

The result of the foregoing labored and somewhat protracted examination is, that the defendant is entitled to judgment upon the case.

                           Judgment for defendant.