Referee’s Opinion.
“The first consideration in this case is, what effect the words, 1 Titles to be satisfactory,’ found at the close of the written contract, shall have in determining the rights of the parties under it.
“It is claimed for the purchaser, Mrs. Coles, that these words give her the right to abandon the purchase, if, under the advice of counsel, given in good faith, she honestly believed there was some defect in the title of the vendor; and in determining to abandon it, she was not actuated by a capricious desire to get rid of the contract. To place this construction upon the words in question, is to render the contract a conditional one, and to constitute the purchaser the sole judge of the title. Contracts of sale and purchase may be framed with that view, and if specially drawn, so as to convey that meaning and preclude any other interpretation, courts would be bound to give them the effect contended for; but it seems to me that the words here used fall far short of reaching that point. Here are no words of condition, declaring the contract void if counsel’s opinion should be adverse to the title, or making that the test of its being satisfactory to the purchaser. The words only express what is implied in every agreement of this kind, that the title to the purchaser shall be a good marketable one, of which the courts must judge on objections to be stated, if the parties should happen to differ about it.
“ In Lord v. Stephens, (1 Young & Col. Ex. R., 222,) the contract contained this clause: 1 In case the title shall not be satisfactory, to Stephens, (the purchaser,) his heirs or assigns, or his or their counsel, these presents shall be void to all intents and purposes and yet it was held by Lord Lyetohurst, (then Chief Baron of the Exchequer,) that these words did not authorize the party to put an end to the contract, except for cause to be shown by *486 objections to the title, of the sufficiency of which the Court must judge, and not the party.
“ Finding then nothing in the form of the contract to give the defendant the right to rescind if dissatisfied, we must look into the objections that have been taken in order to see whether there is anything that is really calculated to impair the title, or to render it doubtful in the purchaser.
“The objections are all confined to supposed defects in the proceedings taken by an administrator before a late Surrogate of New York, for the sale of the real estate of Isaac Lawrence, deceased, for the payment of debts. This was in 1843, and the sales under the Surrogate’s order were made early in the year 1844.
“ In reviewing these proceedings, the two principal considerations are:
“ 1st. Did the Surrogate acquire jurisdiction of the subject matter of the sale ? and,
“2dly. Did he acquire jurisdiction of the persons of those (viz., the heirs-at-law of the intestate,) whose rights of property in the estate were to be divested by the sales ?
“ The presentation of the administrator’s petition to the Surrogate, containing a statement of the facts, which the statute particularly requires to be set forth in such petition, duly verified by the oath of the administrator, and praying for an order authorizing him to mortgage, lease or sell the real estate for the purpose of paying the debts of the intestate, is all that is necessary, in the first instance, to give the Surrogate jurisdiction of the subject-matter. He then proceeds to make an order for all who are interested in the estate to appear before him and show cause, if any they have, why a sale, &c., should not be made. The publication of such order, and the service of it personally on such of the parties as reside in the county, are the means provided by law for the Surrogate to obtain jurisdiction of their persons, so that the subsequent orders he may make will be binding upon them.
“These jurisdictional facts, both as to the subject matter and the persons, must affirmatively appear to exist in order to give validity to the proceedings. In respect to courts of limited jurisdiction, like the Surrogate’s, such facts are not to be presumed. *487 They must be proved by record evidence or by the next best evidence to it, when the record is lost or has been destroyed. When the Surrogate has once obtained jurisdiction of the case and of the parties, if any slip or irregularity in the subsequent proceedings occur, or any mistake or error of judgment happens, the whole proceeding is not thereby vitiated so as to become a nullity. It is only that which is irregular in practice or erroneous in judgment that can be taken advantage of at all; and only then in a direct proceeding for the purpose, either by motion before the Surrogate or by appeal from his decision. It cannot be done by setting up such irregularity or error of judgment in avoidance of his acts or decrees in any collateral action. I need only refer to the cases of Jackson v. Robinson, (4 Wend., 436,) Jackson v. Irwin, (10 id., 441,) and Bloom v. Burdick, (1 Hill, 130,) for the law upon this subject. (See, also, 1 Seld., 434.) These cases and a number of others in our reports have presented questions upon titles derived from administrators’ sales under Surrogates’ orders, and they clearly show the distinction that universally prevails between judicial proceedings void for want of jurisdiction and voidable for irregularity and error. The first are nullities anywhere and everywhere. The others stand good everywhere until set aside or reversed, but cannot be impeached collaterally. Now as respects the case in hand:. No fault has been or can be found with the administrator’s petition to the Surrogate, either for want of form or want of substance, or as not giving him jurisdiction of the subject-matter, viz.: the propriety of ordering a sale of the real estate for the payment of debts. It contained upon its face all that was necessary to be stated to warrant the making of the order calling on the parties in interest to. appear and show cause. Such order was made. The personal service of that order upon some of the parties, and the due publication of it, by way of summons or notice to others of the parties, is the process by which the Surrogate was to acquire jurisdiction of them. They were all adults. Minors form an exception, since they cannot be subjected to the action of the Court without first assigning them a guardian.
“ The proper service and publication of the order are important jurisdictional facts, which it was necessary to show took place. *488 One question, and only one, has been made, with respect to the sufficiency of the publication. This relates to the four weeks’ publication of the order in a newspaper of the county of the Surrogate. It was published in such a paper; (a daily paper;) but the order appeared in it only once a week, in four successive weeks, and the first insertion was at least five weeks before the day for showing cause. Is this a compliance with the statute, which simply declares it “ shall be published for four weeks in a newspaper printed in the county ?”
“ In cases where it becomes necessary to publish an order in the State paper, the statute is more explicit; for there “once in each week,” for four weeks, or six weeks, as the case may be, is its language. Was a different requirement intended, in the first case, by omitting to say “once in each week,” and thus leave it to be inferred that a daily or semi-weekly insertion was meant ? This seems to me improbable, and more especially so from the fact, which must have been well known when the law was revised. (2 R. S., 101,) that in many of the counties of the State, a daily or semi-weekly newspaper was not issued, and such is the case even at this day.
“ In Sheldon v. Wright, (7 Barb., 39,) the Supreme Court of the Seventh District held that the requirement of the statute (virtually the same as the Bevised,) was satisfied by dour successive weekly publications, provided the first insertion was full four weeks before the day for showing cause; and this was held good, on appeal, in the same case. (1 Seld., 497.) I think this case is decisive of the present question.
“ Then, besides the objection to the manner of publication, another has been made, as appearing upon the face of the-order itself, and that is, that the order does not specify the place (as well as the time) for the appearance of the parties. The statute does, indeed, require that the time and the place shall be specified in the order; and I cannot but think that the order in question does substantially contain both. The caption of- the order which was served and published, as forming a part of it, reads in this wise:
“‘At a Surrogate’s Court, held in and for the county of Hew York, at the Surrogate’s office in the city of Hew York, on the 11th July, 1843, present, D. B. 0., Surrogateand the ordering *489 part directs all persons interested, &c., to appear in this Court on the 30th day of August, at ten o’clock in the forenoon, &c. The Court, then, is the place where the parties are to appear, and the caption shows it to be the Surrogate’s Court, held at the Surrogate’s office, in the city of New York. This, for all essential purposes of the proceeding, is a sufficient designation of the place, which nobody could well mistake or fail to comprehend.
“The next objection taken to the proceedings is, that the order was not served personally on every person in the occupation of the premises, as required by the statute.
“ There were numerous tenants, generally under a hiring for a year, or other short terms, of various parcels of the property described in the petition, and the proofs laid before the Surrogate gave the names of forty tenants or occupants who were served personally with the order. The person who performed this service states, tin his affidavit, that he visited the premises described in the petition, and from inquiries made thereon and in the immediate vicinity, he verily believed that the persons whom he had served with the order were the only occupants of said premises.
“ The petition had stated, that one parcel of propety (of which the premises in question in this cause are part) was in the occupation of one Moir, under a lease for one year, from the 1st May, 1843. There was no proof of service of the order on Moir, and hence the objection to the proceedings as being irregular and imperfect. Admitting that the Surrogate did not acquire jurisdiction over Moir, by reason of this omission, and that the order of sale did not affect him or his rights, how can that prejudice the title of the purchaser or owner of the property at this day ? Fifteen years have elapsed since whatever right he had in the property, as a mere tenant or occupant for a year, ceased, and he can have no claim now. It is argued, however, in support of the objection, that the law requiring service on the tenants in possession, intended such service as an additional means of notice to the heirs through the tenants. This is to make notice to the tenants a part of the process to bring in the heirs; but no such importance, I think, can be attached to it. Notice to the tenants is only intended to give them an opportunity to attend to their *490 own rights, and has no necessary connection with or reference to those of the heirs.
“ There is also good reason to believe, from the testimony of witnesses examined before me, that Moir had left the premises of which he was tenant, and was succeeded by one Collin Shepard, as the occupant, when the messenger went to serve the order. His affidavit states, that on the 14th of August, 1843, the order was served personally on C. Shepard, who was a tenant in the occupation of a part of the real estate at that time.
“As I view the matter, however, all this is immaterial, for whatever rights Moir might have had as tenant, long since expired.
“ No question is made in regard to the sufficiency of the service of the order (either personally or by publication) on the widow and heirs of the intestate. There was an intimation at one time of a defect in regard to Mrs. Wells, one of the heirs, but this, I understand, has been remedied by a release recently executed by her and her husband. It has been since decided that the widow, having previously had her dower assigned to her, was not a necessary party to the proceeding. (Lawrence v. Brown, 1 Seld., 394, decided in’1851.)
“ The next objection I have to consider is one on which considerable' reliance is placed.
“The day for showing cause, by the order, was the 30th August. The Surrogate did not proceed to a hearing or an adjudication until the 2d of September, when he made the order for the sale. The latter order does not show upon its face that any of the parties appeared before him on the previous day, or that the matter stood over by a formal adjournment. It contains only such recitals as would have been proper had the adjudication taken place on the 30th of August, and the order been then made, and hence it is inferred, that a fatal hiatus occurred in.the proceedings, rendering the order invalid except as to one of the heirs, and one only, who appeared, as did also the administrator, on the 2d of September, when the order was made. For the purpose of strengthening this inference, witnesses have been examined to prove from their examination of the books of minutes, containing entries of these proceedings in the Surrogate’s office, that no entry of an adjournment of the hearing of *491 this case, from the 30th of August to the 2d of September, appears in such minutes. But it does appear from a “Diary” kept by the Surrogate, on his office-table at that time, and from which the minutes were afterwards written up by a clerk, that such an adjournment was, in fact, entered in the Diary, though omitted by oversight or mistake of the clerk to be transcribed in the ‘ Book of Minutes.’ Further evidence of the fact of such adjournment is furnished by the proctor, who conducted these proceedings on behalf of the administrator, and the cause for the adjournment is also stated. It is competent to supply such apparent defects by parol or secondary evidence, where the record evidence is missing. (Jackson v. Crawfords, 12 Wend., 533.)
“ But if there had been no formal adjournment of the matter from the 30th August to the 2d of September, I am at a loss to understand how this could affect the whole proceeding. Surrogates’ Courts have no stated terms for the transaction of business. They are required to be constantly open, and the business brought before them, if not completed on one day, may be continued as a matter of course, de die in diem, until finally disposed of. Adjournments must be announced, and should be noted, so that parties may know when again to appear; but there can be no necessity for formal entries of adjournment and continuance from day to day, or time to time, in order to preserve their jurisdiction over the parties or matters in hand. It is only for the regular transaction of business that adjournments should be noted and made known; and if parties are misled or surprised by steps taken in their absence, for the want of sufficient knowledge of an adjournment, they can apply to the Surrogate to be let in to be heard notwithstanding; it being mere matter of practice in Court, which is always under the control of the Judge.
“ In this case the order of sale was made. All the requirements, preliminary to the making of such order, appeared to have been complied with. The property was then advertised and sold.
“ The sales were reported to the Surrogate, and then came the hearing on the motion to confirm. This hearing was adjourned several times. Parties in interest were heard, and finally the order was made confirming the sales, and directing the conveyances to be made to the purchasers. In all this there was no *492 complaint or objection to the regularity of the proceedings or to their validity. And if there had been, it was for the Surrogate to remedy the difficulties, or for an appellate court to correct the errors, if any had occurred. Such things cannot be inquired into in any collateral action or proceeding.
“ One other matter, in the shape of an objection, was presented to my notice, as if to raise a question in regard to the intestacy of Isaac Lawrence, the deceased owner of the property.
“ Prior to the grant of administration on his estate, a paper, purporting to be his will, was offered for probate, and proofs were taken of its due execution. It then appeared, that subsequently he executed another will which revoked the first; and then, again, he canceled the second —and the Surrogate held that the cancellation of the second will did not restore the first, and that he died intestate. This decision was acquiesced in, and the grant of letters of administration was never questioned. It is very certain that it cannot be made a question now, and indeed it has not been pressed.
“ I believe this disposes of all the points which have been presented for my consideration. I have not found it necessary to invoke the aid of the act of 1850 to this case. The titles acquired by purchasers, at this administrator’s sale, in 1844, are, in my judgment, valid without such extraneous support. The heirs of the then deceased owner have never sought to draw them in question. At least, there is no evidence before me that any one of them has ever done so or threatened to do so.
“ My conclusion is, that the plaintiff in this action is capable of making a valid and satisfactory title to the defendant, by the delivery of the deed, which was tendered to her, in pursuance of the contract between them; and that she must be adjudged specifically to perform her part of the contract by accepting the deed, and paying that portion of the contract price which she agreed to pay in cash, over and above the $25,000 (dollars) of mortgage debt remaining upon the property, and assumed by her, with the interest thereon from the first day of June, 1859.
“ As the plaintiff has remained in possession of the property pending this controversy, it is but reasonable to allow the use and occupation to balance the interest on the $85,000 (dollars) of the purchase-money during the same period of time.
C. B. Moore, for appellant.
M. S. Bidwell, for respondent.
“ The defendant must be adjudged to pay the costs of this action. ,
“W. T. McCoun, ; .
“ Referee;."
By the Court—Hoffman, J.
The learned Referee hás noticed, in his opinion printed in the Case, the objections taken to the title, which the plaintiff can make to the property in question. The learned counsel of the defendant has furnished very elaborate points suggesting numerous objections and difficulties. We think there are no objections upon which any argument can justly be made, except those noticed by the Referee.
With regard to the first, (the sufficiency of the publication,) and the last, respecting an alleged will of Isaac Lawrence, we need add nothing to the reasons on which the Referee has held them unfounded.
The second objection we think not well taken. The order to show cause, is to designate time and place. The caption of the order is such as clearly to show that the Court was to be held, and that the place designated for holding it was the Surrogate’s office, in the city of New York, and that the 30th of August, 1843, was the time fixed for there holding it.
With regard to the point that service was not made on Moir, an occupant of part of the premises, we may add, besides the strong reasons of the Referee, that the deeds show a reservation of any rights which Moir had under his agreement for a letting.
Counsel refers to the statute, (1 R. S., p. 748, § 27,) providing, that “ every tenant to whom a declaration in ejectment or any other process, proceeding, or notice of any proceeding, to recover the land occupied by him, or the possession thereof, shall be served, shall forthwith give notice thereof to his landlord, under the penalty of forfeiting the value of three years’ rent.”
I do not see how this section applies to a notice of an intention to apply for a sale under a Surrogate’s decree for payment of debts; or how, when the landlord himself has been duly served, *494 the neglect of the tenant could affect the decree as to the landlord’s title; nor in what way the omission to give due notice to an occupant and tenant, can have any operation, but to leave his rights unaffected.
There remains but one other objection which we deem it necessary to notice, viz., the admission to enter regularly the adjournment of the proceedings. It has been proved that there was in point of fact an adjournment made in a diary. But we hold clearly, that independently of this evidence, the objection would be groundless. It would be unendurable, if titles could be shaken by a failure of a Judge of a Court to have a record noted of his adjournments of proceedings. The presumption of regularity in obtaining a judgment, should not be allowed to be gainsayed for such matters, unless a statute had peremptorily directed a formal minute to be made, and invalidated the proceedings, if it was neglected.
We fully concur in the results of the Referee, whose judgment must be affirmed, with costs
Affirmed accordingly.