Larremore, J.
The material facts in this case are undisputed, and the decision of it depends upon the questions of law raised on the trial.
It will hardly be claimed, in view of the evidence, that the judgments returned against Dunn, are liens on the property in question, and the only remaining objection to the title, is the outstanding mortgage of four hundred dollars, given to Stewart (and so far as the proofs and records show), held by Him at the time of the proceedings in foreclosure hereinafter mentioned.
It is contended that said mortgage is cut off by the foreclosure of a prior mortgage, to which suit Stewart was a party. It appears from examination of the judgment roll in said suit, that Stewart was served as a non-resident defendant, by publication of the summons, in pursuance of section 135 of the Code.
Two objections are urged as to the validity of such service :
1. That the affidavit upon which the order of publication was made, was defective, and conferred no jurisdiction upon the judge who made said order.
*173 2. That the summons was not published, nor was a deposit made in the post-office, in the manner prescribed by law.
The affidavit upon which said order was granted, was made by the managing clerk of the attorneys who conducted, the foreclosure suit. He swears “ that he has made great efforts to get personal service upon said Stewart and his wife, and has made diligent search for them in the city of Few York, where they formerly resided, but has not been able to find them, nor can he find them; but he is informed and believes, that they are non-residents and do not reside in the State of Few York, but do reside at Belleville, in the State of Few Jersey.” In addition to this, is the affidavit of one of the attorneys for the plaintiff, who swears, on information and belief, that Stewart and wife do not reside in the State of Few York, but reside in Belleville, in the State of Few Jersey.
In neither affidavit is it stated from whom the information was derived. The order of publication recites that the defendants Stewart and wife cannot, after due diligence, be found within this State, and that they are not residents thereof.
Do these affidavits, or either of them, meet the requirements of the statute ?
The action is one affecting real estate in which the defendant has an interest, and of the subject matter of which the court had jurisdiction.
It was held by the general term of the supreme court, in Van Wyck v. Hardy (11 Abb. Pr., 475), that an affidavit as to non-residence made upon information and belief, was sufficient. This decision, though made by a divided court, has not (so far as I can learn), ever been overruled. It was reviewed at the Monroe general term in Peck v. Cook (41 Barb., 547), where it was intimated that the ruling should not be extended beyond the facts of that case.
*174 The cases cited by defendant’s counsel do not necessarily conflict with the decision in Van Wyck v. Hardy ; and as the fact of Stewart’s non-residence was not controverted on the trial, I think, after a lapse of fifteen years, it may be safely assumed. I feel it my duty to follow the ruling of the general term in this district, and hold the affidavit in question sufficient.
The affidavit of Weller, as to the mailing of the summons and complaint, showed that he deposited a copy thereof “ duly directed to James Stewart, and Ann Stewart, his wife, at Belleville, Hew Jersey, and paid full postage thereon, there being a regular mail communication between the city of Hew York and Belleville, H. J.” The use of the terms '■‘■full postage,” and “ regular mail,” together with the designation of the places. between which communication by mail was designed to be made, leave no reasonable doubt as to the fact that the deposit was made in the post-office at Hew York city. And Weller testified on the trial that the. deposit was thus made.
Mrs. Stewart had no interest in the property at the time of the foreclosure. She had previously joined with her husband in a conveyance of it to Krakmer. The copy of the summons and complaint, as mailed and directed to “James Stewart, and Ann Stewart, his wife,” was, I think, a substantial compliance with the statute as to James Stewart.
A more serious question arises as to the publication of the summons. By section 135 of the Code, such publication is to be made not less than once a week for six weeks. The affidavit of the printer of the Daily News, annexed to the judgment roll in foreclosure, shows that the summons was published in that paper once in each week for six weeks commencing Hovember 15, 1856. Such affidavit is presumptive, but not conclusive, evidence of the regularity of the proceeding. It was shown on the trial, by the produc *175 tion of the files of the newspaper in question, that said summons was published on the following days :
1856. Nov. 15. Saturday,
66 66 17. Monday.
66 66 24. 66
66 Dec. 1. 66
66 66 8. 66
66 66 15. 66
It is thus apparent that but two days intervened between the first and second publication of the notice, whereas it is urged that such interval should have been seven days. If the latter proposition be correct, the defect, being one of jurisdiction, is fatal, and the defendant is entitled to the relief sought.
What, then, is the legal interpretation of the term week, as used in section 135, which directs publication of the summons (i once a week for six weeks.”
In Bourner' s Law Dictionary, a week is defined to be “ seven days of time, commencing immediately after twelve o’clock on the night between Saturday and Sunday, and ending at twelve o’clock, seven days of twenty-four hours each, thereafter ; of which the first day thereof is called Sunday, and the seventh, Saturday (2 Bouv. L. Dic., 647).
In Roukendorff v. Taylor (4 Pet., 361), an objection was made to the validity of a tax sale, on the ground of the insufficiency of the notice thereof. The act of Congress, under which the sale was made, required the collector to give public notice of the time and place of sale, by advertising once a week for three months. The first notice was published on December 6, 1822, the last on March 10, 1823. The full time was embraced in these periods, but it was contended that ' the notice was not published once in each week, within the meaning of the act, inasmuch as by an examination of the dates of publication, it appeared that at one time eight days, at another, ten days, and at another, eleven *176 days transpired between said dates. This, it was urged, was fatal to the proceeding ; that the publication, being once made, it was essential to the validity of the notice that it should be published every seventh day thereafter.
Mr. Justice McLean, in delivering the opinion of the court, says: ‘1 The words of the law are once a weelc. Does this limit the publication to a particular day of the week ? If the notice be published on Monday, is it fatal to omit the publication until the Tuesday week succeeding? The object of the notice is as well answered by such a publication, as if it had been made on the following Monday. A week is a definite period of time, commencing on Sunday and ending on Saturday. By this construction, the notice in this case must be held sufficient. It was published Monday, January 6, and omitted until Saturday, January 18, leaving an interval of eleven days ; still the publication on Saturday was within the week succeeding the notice of the sixth. It would be a most rigid construction of the act of Congress, justified neither by its spirit nor its language, to say that this notice must be published on any particular day of the week. If published once a week, for three months, the law is complied with, and its object effectuated” (See, also, Bunce v. Reed, 16 Barb., 347.
A dopting this construction upon the point in controversy, the publication of the summons appears to have been in accordance with the statute. The authorities referred to (Brod v. Heyman, 3 Abb. Pr., 396; Richardson v. Bates, 23 How. Pr., 516) relate to cases in which judgment was entered before the expiration of the time in which service by publication was complete. In this case no such objection can be made, as such service was complete on January 16,1857, and the judgment was not rendered until March 2, 1857.
It was held in Sheldon v. Wright (7 Barb., 39) that *177 the publication of a surrogate’s order to show cause, which, by statute, was required to be published immediately for four weeks successively, was properly made by four successive weekly publications before the return day thereof, and that the statute did not require the first of the four successive publications to be four weeks before the day of showing cause. The ruling in this case was cited and approved in Olcott v. Robinson (21 N. Y., 150), which establishes the doctrine that upon a sale of real estate upon execution, publication of the notice in six successive numbers of a weekly paper was a sufficient compliance with the statute, although the first publication may be less than six weeks prior to the sale; provided said notice was posted, as required by the statute, forty-two days previous to the sale.
In view of the decisions referred to, and the facts' and circumstances of the case, I think the defendants should complete the contract for the purchase of the premises. As they have acted in good faith, and the objections raised were such as should be passed upon by the court, no costs are allowed. Let a judgment be entered that defendants complete the purchase within twenty days after service of the order, and for a dismissal of the complaint without costs. If the defendants neglect or omit to complete the purchase as above prescribed, then the plaintiff shall have judgment in his favor, with costs. The judgment herein to be settled on two days’ notice.