JACKSON, ex dem. John M'Fail and others, *vs.* CRAWFORDS.

*A petition to a surrogate* for the sale of real estate, presented by *administrators* accompanied by an account of the personal estate and debts of the intestate, is sufficient to *confer jurisdiction* upon the surrogate, in a proceeding relative to the sale of real estate, under a surrogate's order for the payment of debts.

The title acquired under such sale cannot be defeated by showing any *error* or *irregularity* in the proceedings before the surrogate, in any other way than by *appeal ;* such error or irregularity cannot be shown in a collateral action.

*Parol evidence* is admissible to show the regularity of proceedings before a surrogate for the sale of an intestate's estate, where it appears that the records and papers of the surrogate, during the time that the proceedings were had, were not properly kept ; and the presumption is thus raised that papers of his office may be lost.

THIS was an action of *ejectment*, tried at the Steuben circuit in January, 1830, before the Hon. SAMUEL NELSON, then one of the circuit judges.

The plaintiffs claimed the premises in question as the *heirs at law* of their father, *John M'Fail*, late of Cohocton in the county of Steuben, where the premises are situate. The defendant is in possession under title derived from an *administrator's sale*, by virtue of a *surrogate's order*. The rights of the parties depend upon the validity of that sale.

The surrogate of the county produced the records of his office, from which it appeared that on the 18th June, 1817, letters of administration were granted to John Slack and Samuel D. Wells. He also produced the following papers, found in his office: 1. An inventory of the estate of the intestate, filed 1st December, 1817. 2. An account of sales, in which it was stated that on 22d January, 1818, all the personal property of the intestate was sold at public vendue ; this paper has no signature to it. 3. and 4. Two papers purporting to be lists of debts against the estate, also without signature. 5. A petition from the administrators, bearing date 12th February, 1818, addressed to the surrogate of the county, stating that they found the personal estate to be insufficient to meet the demands against the estate, praying the aid of the surro-

gate in the premises.    6. A paper purporting to be the mi-
nutes of a surrogate's court, held on the 8th April, 1818, in the
hand-writing of the then surrogate, in which it was stated
that at such court all the real estate of John M'Fail was or-
dered to be sold at public sale.    7. An order of sale bearing
date 8th April, 1818, by which the administrators were direct-
ed to sell all the real estate of the intestate, and that one
John Bennet join in the conveyances; this order was marked
as *recorded* on the day of its date, but in fact was not recorded
until November, 1828.    8. Three bonds, executed by Mehi-
tabel M'Fail, the widow of the intestate, with surety, to *Thom-
as, Benjamin* and *Daniel*, three of the *minor* children of the
intestate; in which bonds it was stated that Mehitabel M'Fail
had been appointed by the surrogate guardian of the infants,
and the condition of each bond was, that she should in all
things well and faithfully take care of the goods, chattels,
lands and tenements of the minor, and render an account, &c.
The defendants then read in evidence a deed from the ad-
ministrators and Bennet to *Reuben Clawson*, bearing date 19th
November, 1818, reciting the surrogate's order and the sale
of the premises, and conveying all the real estate of the intes-
tate to the grantee, and a deed from Clawson of the same
premises, bearing date 1st January, 1819, to *Stephen Craw-
ford*, the husband of one and father of the other defendants.

The plaintiffs proved that besides the three children of the
intestate for whom their mother had been appointed guardi-
an, as appeared by the bonds produced by the surrogate, *Wil-
liam*, another son of the intestate, was a *minor* on the *eighth
day of April*, 1818, and that in respect to him, it did not ap-
pear that a guardian had been appointed.    On the part of the
defendants, it was then proved by the surrogate that he re-
ceived his appointment as surrogate in 1827; that he found
some of the papers belonging to the office at the *dwellings* of
two of his predecessors, and some in the *clerk's office* of the
county, and that many of the proceedings in the office were
imperfect; that he had diligently searched his office, and
could find no other papers relating to the sale of the premises
in question than those produced by him.    *Slack*, one of the
administrators, testified that he presented to the surrogate the

ALBANY,
Oct. 1834.

Jackson
v.
Crawfords.

petition for the sale of the real estate of the intestate, and at the same time presented the account of debts and sales of the personal property; that the surrogate made an order for all persons interested, to show cause why the real estate should not be sold; that he, the witness, took the order to a printer in Steuben county, to have it published in a newspaper, and paid to the surrogate the printer's fees for having it published in the state paper; that the order was published in a newspaper printed in Steuben, and a notice of the same affixed in the town in which the premises were situate, but he did not observe that the order was published in the state paper, nor did he ever see any proof of its publication in that paper; that on the day appointed for showing cause, he attended before the surrogate, who then made the order of sale. He also proved that the widow of the intestate was appointed guardian for *three* of the children of the intestate, and that he paid the fees for the appointment; and that but one appointment of guardian was made during the administration. The evidence of this witness was objected to by the plaintiffs as inadmissible, as well on the ground that he ought not to be permitted to drove the regularity of his proceedings, as that *parol proof* of the proceedings had in the case, was not competent evidence. The objection, however, was overruled and the evidence received.

The counsel for the plaintiffs insisted that the evidence adduced on the part of the defendants was not sufficient to bar a recovery; that the defendants were bound to show a strict compliance with the requisitions of the statute regulating sales under surrogate's orders; that they had failed in showing the publication of the order to show cause in the state paper, and had also failed in showing an appointment of guardian for the *infant heirs,* in reference to the proceeding had to obtain a sale: the appointment being that of a general guardian, and not of a guardian *ad litem;* that as to William, one of the heirs, there was no pretence of a guardian having been appointed for him for any purpose, and that consequently, as to him, the proceedings were wholly void. The judge instructed the jury that, under the circumstances of the case, they were warranted to presume that all nescessary proceedings had been du-

ly had before the surrogate, that the order to show cause had been published in the state paper, and that guardians for the infant heirs had been properly appointed; and if they should so find, the defendants would be entitled to their verdict. The jury accordingly found a verdict for the defendants, which the plaintiffs now moved to set aside.

*S. Stevens,* for the plaintiffs.

*J. A. Spencer,* for the defendants.

*By the Court,* SUTHERLAND, J. The case of *Jackson, ex dem. Jenkins* v. *Robinson,* 4 Wendell, 436, was very similar to this. The plaintiff in that case claimed under a sale made by virtue of a surrogate's order. He proved the letters of administration and the application, on the part of the surviving administrator, to the surrogate, setting forth the deficiency of personal assets, and requesting the aid of the surrogate. The several orders of the surrogate, made in pursuance of such application, were also proved. The defendant objected to the sufficiency of the evidence to entitle the plaintiff to recover, on the ground, among others, that it had not been shown, otherwise than by the recitals in the orders themselves, that there were any debts due from the estate, or that there was a deficiency of assets to pay the same, or that the personal property had been applied to the payment of debts, and consequently that enough had not been shown to give the surrogate jurisdiction; and upon this objection being overruled, he offered to prove affirmatively that *it did not appear* from the inventory and other papers presented by the administrator to the surrogate, on his application for an order of sale, that any debts remained due from the estate of the intestate, and that *it did appear* that a large amount of the property of the estate remained undisposed of. This evidence was excluded by the judge, and upon an application for a new trial, we held that his decisions were correct; that the petition of the administrator to the surrogate for the sale of the real estate, accompanied by an account of the personal estate and debts of the intestate, was sufficient to confer jurisdiction upon the surrogate

over the subject matter, in a proceeding under this act; 1 R. L. 450, § 23 ; that in deciding whether there is personal property sufficient to pay the debts, he acts judicially ; and if he should decide erroneously in respect to it, or should make a mistake as to any other matter submitted to his examination and decision, it would not affect his jurisdiction; that the proceedings would not on that account be void, but voidable only ; that they could not be impeached for any irregularity before the surrogate in a collateral action, but must be corrected on appeal.   1 R. L. 454, § 32.   That decision fully covers this case.   The defects imputed to the proceedings of the surrogate here, are all subsequent to the presentation of the petition for a sale and the inventories which accompanied it ; and if they were admitted to exist, would go to the regularity of the proceedings only, and would not affect the jurisdiction of the surrogate, or the validity of his order of sale.   But the *parol evidence* fully warrants the conclusion that all the proceedings before the surrogate were strictly formal and regular ; and this evidence, I think, was properly admitted, under the circumstances of the case.   It was satisfactorily shown, by the testimony of the surrogate, that the records and other papers belonging to the surrogate's office of Steuben when he took possession of it, were in great confusion ; that many of them were not in the office, but were found in the possession of the families of the two preceding incumbents, and some in the county clerk's office.   This warranted the presumption that many of them had been lost, and justified the admission of the testimony of the administrator, showing what proceedings did actually take place before the surrogate.   The presumption of the entire regularity of those proceedings is strengthened by the long acquiescence of the heirs at law. On the whole, I think it is a clear case for the defendants, and that the motion for a new trial ought to be denied.