# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## JANUARY TERM, 1859.

AMES v. HOY.

An action will lie on a judgment or decree obtained in one of the District Courts of this State.

Where the record book containing such judgment has been destroyed by fire, secondary evidence is admissible to establish the fact of the existence of such judgment and its contents.

An action can be maintained at law upon a decree in equity for a specified sum of money.

APPEAL from the Fourteenth District, County of Nevada.

This was an action of debt on a decree for a sum of money obtained by the plaintiff against the defendant, in the District Court of Nevada county. The case was tried without a jury.

On the seventh day of October, 1854, the plaintiff in this suit obtained a decree in the District Court of Nevada county against the defendant Hoy, for a dissolution of copartnership then existing between

plaintiff and defendant, and also for the sum of $1,785.97, to be paid by defendant to plaintiff. On the nineteenth day of July, 1856, the records of the District Court of Nevada county were destroyed by fire, including the decree which was then unsatisfied.

The existence and entry of the decree was denied by the answer. On the trial, the destruction of the record of the decree was admitted; whereupon the plaintiff offered to prove by parol testimony the existence and contents of the decree; to which evidence the defendant objected, on the ground that the entry and contents of the decree could not be established by parol testimony, and that no action at law can be maintained on a lost judgment. The Court overruled the objection and admitted the evidence, and defendant excepted. Plaintiff had judgment, and defendant appealed to this Court.

*McConnell & Niles* for Appellant.

I. The complaint shows that the judgment upon which suit was brought, was rendered in October, A. D. 1854. Inasmuch as such judgment can be enforced by execution, no action of debt can be sustained thereon.

II. The complaint is defective, because it shows upon its face that there is now no judgment in existence in the District Court of Nevada county in favor of plaintiff and against defendant.

III. The Court erred in admitting the evidence of Hill and Elliot to prove the rendition of a judgment by the District Court of Nevada county in favor of plaintiff and against defendant Hoy, and the contents of such judgment.

As to the first point, see section 209 Practice Act. The object of this section seems to have been to take away the right and the necessity of suits on judgments, by extending the time for enforcing them by execution. Indeed, it would almost seem that the Legislature intended to take away all rights of action upon a domestic judgment; and this idea is certainly countenanced by the language of the statute of limitations, which provides a period of limitation for actions upon judgments recovered in the Federal Courts, and other State Courts, but omits to mention domestic judgments.

It will be conceded that Courts discourage this sort of action. In

Ames *v.* Hoy.

England, the Legislature has discouraged it by passing a statute deny-ing costs to plaintiffs in actions upon judgments.    See Statute 43 Geo. III, 1 Chitty's Pl., sec. 3.

The fact that an action upon a domestic judgment is not mentioned by our statutory law, is a powerful argument against its existence ; for if such an action can be sustained in this State, it is scarcely possible that the Legislature would have left a proceeding so liable-to abuse without any of the checks and restrictions which it has been solicitous to throw around all other forms of litigation.

II.  This point seems to us sufficiently clear, but lest the Court may have doubts we submit the following :

The plaintiff can find no case reported where an *attempt* even was made to sustain an action upon what is called by him *a lost judgment ;* and the absence of any evidence that the point was ever mooted by the Courts, is a very conclusive argument against the doctrine contended for.

In point of fact, the phrase " lost judgment " involves a solecism in language ; for if the judgment roll is lost, there is no *judgment* in existence.    Really, the obligation of a judgment seems to depend so immediately and intimately upon the *judgment record,* that no meta-physical acuteness can separate them.    It is certain that it is the record that creates the obligation, and if it be lost or destroyed, the obligation is gone until the judgment is restored.    In this respect, a judgment differs from a bond or other *chose in action ;* for if a bond be lost, the obligation or debt still remains : therefore an action may be maintained on a lost bond or other instrument *in pais,* either at law, or, as is more common, in equity, because the obligation to pay still subsists.    But where is the obligation to pay a *lost judgment ?*  How can satisfaction be entered on a *lost record ?*  In the case of a lost bond the Court may, and usually does, require indemnity from the plaintiff against the future enforcement of such bond, should it be found ; but it is manifest that this course would be impracticable in the case of a judgment record.

By sec. 208 of the Practice Act, the defendant in execution is enti-tled to have satisfaction of the judgment entered on the *judgment rec-ord,* on payment of the judgment debt.    This is a positive right of which the judgment debtor cannot be deprived.

Lord Coke defines a record as follows :  " Record is derived of the Latin word *recordor*, that is, *to keep in mind ;* as the poet saith ' *Si rite audita, recordor ;*' and therefore a record or enrollment is a memorial or monument of so high a nature, as it importeth in itself such an absolute verity, as if it be pleaded that there is no such record, it shall not receive any trial by witnesses, jury or otherwise, but *only by itself*."    Coke on Litt., p. 117 (*b*).

Again, the same author, after explaining in language like the above the general nature of a record of a Court of Record, proceeds to state that " Records import in themselves such incontrollable credit and verity, as they admit no plea, averment or proof to the contrary ; and if such a record be alleged, and it be pleaded that there is no such record, it can only be tried by itself."    *Ibid*, p. 260 (*a*).

Hargrave and Butler, in their notes to the first of these two quotations remark :  " The words ' if it be pleaded ' are material ; for in evidence before a jury the *copy* of a record will be sufficient proof of its existence and contents ;" and I refer to Comyn's Digest, title " *Certiorari*," to which we also call attention.    See note 164, liber 2, p. 117 (*b*) Coke on Litt.

The form of the pleadings in debt on judgment seems to us conclusive on this point :  " One of the best arguments or proofs of the law is drawn from the right entries or course of pleading ; for the law itself speaketh by good pleading, and therefore Littleton sayeth ' it is proved by the pleading,' etc., as if pleading were ' *ipsius legis viva vox.*' "

The precedent given by Chitty of a declaration on a judgment has the following averment as the *prout patet per recordum* clause :

" As by the record and proceedings thereof *remaining* in the said Court of our said Lord the King himself, which said judgment still remains in full force and effect."    2 Chit. on Pl., p. 483.    See the plea of *Nul Tiel Record*, 3 Chit. Pl., p. 994 ; Saunders' Reports, and Sergeant Williams' notes to the same ; Note (3) to Pitt *v.* Knight, 1 Saunders, 92 ; 1 Chit on Pl., pp. 111, 370, 485 ; 3 Black. Com., p. 331 ; 3 Stephens' Com., pp. 583, 584.

The third point is so nearly allied to the preceding one, that they should perhaps be properly argued as one.    There is, however, some difference between them, growing out of the inherent difference exist-

ing between pleading and evidence, and we therefore consider them separately.

We have already remarked upon the well defined distinction between records and all other paper evidence of debts. In the one, the debt is created and subsists independent of the evidence. In the other, the paper monument is not only the evidence of the judgment obligation, but also the obligation itself. You cannot separate the judgment roll from the obligation to pay it.

In our books on evidence, many things besides judgment and decrees are called *records;* for instance, statutes; charters of corporations; recognizances; fines and recoveries, and very frequently, the written evidences of the acts and doings of public men and bodies. Indeed, we frequently call registered deeds and mortgages records; and we would here suggest that those authorities which seem to hold that the loss of a record may be supplied by parol proof, apply to the last mentioned kinds of records, and not to judgments or public statutes.

Greenleaf, in his treatise on the Law of Evidence, says : "If the record is lost, and is ancient, *its existence* may sometimes be presumed; but whether ancient or recent, after proof of its loss its contents may be proved, like any other document, by secondary evidence." 1 Greenleaf's Ev., sec. 509.

The first part of the above quotation is simply the application of the doctrine of presumptions, or proscription to rights vested in pursuance of a supposed grant by matter of record; as for instance, if a corporate body have from time immemorial exercised certain corporate franchises, although there be no charter in existence, a *charter* will be presumed. The principal American case cited by Greenleaf in support of the doctrine is, Stockbridge *v.* West Stockbridge, 12 Mass. R. 400. In that case the charter had been lost thirty years, and was therefore *ancient.* But no case is cited showing that a suit may be brought on a lost record, and parol evidence given of its contents. *Ib.* 501.

Mr. Justice Story enumerates lost bonds, lost notes, and other lost instruments forming the subject of equitable interference, but never once mentions lost judgments or decrees. 1 Story's Eq. Juris., sec. 81.

A Court of Equity might restore a lost judgment, but could not enforce it until it was restored.

The true rule in cases of lost judgments and decrees is, in the first place to restore or substitute the judgment by such proofs of a secondary nature as are within the reach of the party seeking the restoration, and then to enforce the same by execution, or bring an action of debt upon it, provided such action is maintainable.

The case of Jackson *ex rem.* Taylor *v.* Cullum, 2 Blackford's Rep. 228, was an action of ejectment. The defendant relied on an outstanding title founded on a Sheriff's deed; such deed having been given after a sale under a judgment and execution. The judgment, execution and deed having been burned, he offered parol proof of their contents.

The Court held that such evidence was admissible.

Here it will be noticed that the operative instrument in the creation of defendant's estate was a *Sheriff's deed.* A deed is a matter *in pais,* and we have never denied that parol or any other secondary proof may be admitted to prove the contents of such instrument where it may be necessary.

But inasmuch as the Sheriff's deed must be founded on the judgment or decree of a competent Court, it follows that defendant was also admitted to prove the *fact of the rendition of such judgment,* and the issuing of execution. There is, as the Court will see, great difference between proving the existence of the judgment as *a past fact,* and proving its contents as the foundation of a present proceeding. ·

The authorities cited from Cowen & Hill's notes to Phillips on Evidence, are far from sustaining the opinion of the District Judge. Cow. & Hill's notes to Phil. on Ev., note 124, part 2, p. 286.

The original work of Mr. Phillips states that " if a deed enrolled be lost, a copy of the enrollment made out by the Clerk of the Peace, but not proved to be examined, is not admissible."

The note of Cowen & Hill has reference to this. They begin their note by saying that " this species of evidence can only be applicable to those cases where very ancient records are lost; for if a recent record be lost, and its contents can be ascertained, the Court will *permit a fresh one to be filed.*"

In support of this they cite Jackson *v.* Hammond, 3 Caine's Rep. 496, where the original *nisi prius* record and issue were lost, and the

Supreme Court, after a lapse of six years, allowed the plaintiff upon affidavits to file a new *nisi prius* record and *postea*, enter judgment and sue out execution.

They also cite and rely on Douglass *v.* Yallop, which is thus briefly reported by Sir Jas. Burrow: " A neglect of entering judgment, and the loss of the roll having been sufficiently proved to the Court, a rule was made 'that the Clerk of the Judgments shall sign a new roll, whereon is entered the judgment signed in this cause in Michaelmas term, 1729,' and that the same be numbered as roll 256, and filed among the rolls of that term; a special entry being first made expressing the day of docketing the same. And it is further ordered that this judgment shall not be made use of against the administrator of the defendant." Douglass *v.* Yallop, 2 Bur. R. 722.

It appears from the report that this order was made in 1759, just thirty years after the rendition of the original judgment; a very long period certainly under the circumstances.

In North Carolina, a memorandum from the Clerk's docket of the amount of a judgment was received in favor of a purchaser at a Sheriff's sale, upon the ground that the record had been made a very long time ago, and that it could not be found after much search. But the Court said if the record had been recent they would have hesitated about receiving it. Doe *v.* Greenleaf, 3 Hawks' N. C. R. 281; See also, Adams *v.* Betz, 1 Watts' Pa. R. 428, cited by Cowen & Hill.

*Buckner & Hill* for Respondent.

There are but two points herein:

*First.* That as execution could have been issued on the judgment, no action could be sustained thereon; or, in other words: that an action of debt will not lie on a judgment if an execution can be issued thereon.

*Second.* That no action at law can be sustained on a lost or destroyed judgment.

That an action can be maintained on a domestic judgment is a proposition well settled by the Courts of England and of almost every State in the Union. Howard *v.* Howard, 15 Mass. R. 197; 1 Chitty's Pleadings, 103, 104, 354, 355; 2 *Ibid*, 232–233, and notes; Post *et.*

*al. v.* Neafie, 3 Caine's R. 22 ; 6 Wheeler Am. Com. Law, 268 and seq. ; 1 Cowen's Treatise, 47 ; 1 Hill R. 645 ; Storer *v.* Storer, 6 Mass. R. 390 ; 7 Cranch. R. 481 ; 11 Condensed Rep. (S. C.) 578 ; 19 Johnson, 162 ; 15 *Ib.* 233 ; 1 Comyn's Digest, " Debt,"—a—2 ; Greathouse *v.* Smith, 3 Scammon, 541.

Conceiving the question as to right of action on a judgment to be well settled by the foregoing authorities, the next question is : When, or at what time shall the action be commenced ?

We hold that an action of debt may be brought on a domestic judgment immediately on the recovery thereof. Dennison *v.* Williams, 4 Conn. 402 ; Dundo *v.* Doll, 2 John. 87 ; 6 John. 98 ; 16 John. 66 ; Hale *v.* Angell, 20 John. 342 ; 6 Cowen, 695 ; Clark *v.* Goodwin, 14 Mass. 237 ; Greathouse *v.* Smith, 3 Scammon, 541 ; Smith *v.* Mumford, 9 Cowen, 26 ; Church *v.* Cole, 1 Hill, 645.

In the case of Church *v.* Cole, it is expressly decided that an action will lie on a judgment, although time for issuance of execution has not yet elapsed. And in 3 Scammon, 541, the same question raised and distinctly decided that an action may be maintained on a judgment although the judgment creditors might issue an execution thereon.

By common law, an action could be maintained within a year and a day on a domestic judgment, that being the life of a judgment without issuance of execution. 1 Comyn's Digest, Debt—a—2.

By our statute the time is extended from that limitation to five years, and judgment has its life for five years without issuance of execution. Wood's Digest, 195, art. 948.

The next proposition is, that no action can be sustained on a LOST or DESTROYED judgment.

We cannot perceive the difference in maintaining an action upon a judgment on a record undestroyed, and an action on a judgment on a record destroyed. The question is more as to admissibility of parol testimony to prove the contents of the record.

Numerous authorities can be cited on this point, but the following will be found sufficient : Jackson *ex dem.* Taylor *v.* Cullum, 2 Blackford, 228 ; Stockbridge *v.* West Stockbridge, 12 Mass. 400 ; 1 Greenleaf on Evidence, sec. 509, note 5 ; Nims *v.* Johnson, 7 Cal. 110.

. . The testimony in this cause shows most clearly and conclusively the

Ames *v.* Hoy.

destruction of the entire record ; nay, it is even admitted by the parties, and in this it differs from the case of Nims *v.* Johnson, a portion of the record therein being in existence.   In that action they failed to show the loss, as a foundation for the introduction of secondary evidence as to contents ; in this cause, the loss is satisfactorily proven and admitted.

From the above authorities the conclusion is irresistible, that an action of debt may be maintained on a domestic judgment at any time within its life, and that if the record of the judgment sued upon be lost or destroyed, then that its contents may be proved by parol evidence.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J. concurring.

Plaintiff recovered a judgment in the District Court of Nevada county, in October, 1854, for a sum of money.   The judgment was in an equitable suit brought to dissolve a copartnership and settle the firm accounts, and for a decree for the balance due.   The records of Nevada were consumed by fire before the institution of this suit, and the papers and minutes of the Court evidencing this judgment destroyed.   An action at law is now brought to recover the amount of this judgment or decree.   Several questions are made :

1. That suit cannot be maintained in this State on a domestic judgment.   At common law, actions could be so maintained.   (1 Ch. Pl. 103–4.)   There is nothing in our statute which divests the right ; and the policy and inconvenience, suggested by the appellant, applied as well in England as here.   The chief argument is, that there is no necessity for a right of action on a judgment, inasmuch as execution can be issued to enforce the judgment already obtained, and no better or higher right or advantage is given to the subsequent judgment. But this is not true in fact, as in many cases it may be of advantage to obtain another judgment in order to save or prolong the lien ; and in this case the advantage of having record evidence of the judgment is sufficiently perceptible.   The argument that a defendant may be vexed by repeated judgments on the same cause of action, is answered by the suggestion that an effectual remedy to the party against this annoyance is the payment of the debt.

2. It is also argued that the destruction of the book containing the judgment is the destruction of the judgment itself; so that the primary evidence of the judgment being removed, no other proof of it is admissible.  We think that this position is alike indefensible in reason and on authority.

3. The last objection is, that no action can be maintained at law upon a decree in equity for a specific sum of money.  The action in the case before us may be considered to be in *debt*, or as an action in the nature of the action of debt, under the old system.  This action was proper whenever a sum liquidated and made definite by contract or judgment was recoverable, and we are not able to perceive why a recovery in equity for a certain and ascertained amount is not as legitimate a basis for action as a judgment at law.  Some of the most respectable Courts in the Union have so adjudged, and we think properly.  See 15 Mass. 196, and other cases cited therein.

The judgment is affirmed.