In Matter of Will of Warfield.

The petition for a rehearing in this case is denied. Welch testified in regard to his interest when his deposition was taken. He stated that he had formerly owned a portion of the property, but had sold it. He so stated both on his direct and cross-examination. The fact that certain deeds were afterwards given in evidence, showing his previous ownership, was not sufficient to exclude the deposition.

The point in regard to the testimony of Shear is not well taken. The petition is denied.

---

# IN THE MATTER OF THE WILL OF WARFIELD.

WHERE the Probate Court acquires jurisdiction to probate a will by the presentation to it of a proper petition for that purpose, and the publication of notice of time of proving the will, and afterwards in such proceeding admits the will to probate, its determination is final, except upon a direct proceeding by appeal or otherwise to reverse it, and cannot be questioned collaterally.

A proceeding by petition to the Probate Court to obtain an order that a former probate of a will therein be adjudged void, on the ground of want of jurisdiction, and that the will be admitted anew to probate, is not a direct proceeding to set aside the former probate, but a collateral proceeding, in which such former probate can only be attacked for want of jurisdiction, and not for irregularity.

The existence and contents of a record or other document to show the regularity of legal proceedings, may, if the original be lost or destroyed, be shown by secondary evidence, the same as of any other lost instrument.

The existence of a petition, for the probate of a will which is not on file may, after the lapse of several years be inferred, from mention thereof in the minutes of the Probate Court and reference thereto in books kept by the Clerk and papers on file, and oral testimony tending to prove, but not positively asserting the fact.

Where it was shown that a petition, since lost or destroyed, was filed in the proper Court, the object of which was to procure the probate of a will—that the testator was dead when the petition was presented, and resided at the time of his death in the county where the alleged probate was had—that the petition was drawn by lawyers whose business it was to prepare such papers—that the Court assumed jurisdiction—took proof of the execution of the will—issued letters testamentary, and ordered and approved a sale of real estate by the executor: *held*, that it should be presumed, after the lapse of eight years, that the petition contained a statement of the necessary jurisdictional facts.

A failure to make the order admitting a will to probate on the day specified in the notice, or to fix, by adjournment of the proceeding, a subsequent day for the order, is a mere irregularity, and does not affect the jurisdiction.

In Matter of Will of Warfield.

It is not necessary to the validity of a probate that a formal judgment or decree, that the will is admitted to probate or is proved should be entered; a direct statement that the will is proved, although entered in the minutes as part of and preliminary to an order directing letters to issue, is sufficient.

Courts will uphold where it is possible a contemporaneous interpretation of a statute under which interpretation rights of property have for many years been acquired.

The omission by the Probate Court of San Francisco in its proceedings in probating wills previous to 1855, to attach to the will and file with it for record the certificate mentioned in Sec. 24 of the act concerning estates of deceased persons, is not a fatal defect, invalidating the probates of that period.

APPEAL from the Probate Court of San Francisco.

The facts are stated in the opinion of the Court.

*Wm. H. Clark*, for Appellant.

I.   There was never before the Court any petition whatsoever for the admission of the will of the testator to probate, always excepting the petition of the appellant herein, and the evidence introduced by the intervenor is incompetent and insufficient to establish the existence at any time, or the loss, or destruction, or the contents of such petition.

There has been no foundation laid for the introduction of secondary testimony upon the subject of such petition, by showing the loss or destruction thereof, or in any way accounting for its absence.

Before inferior evidence of the contents of a record can be introduced, the absence of the higher evidence must be clearly accounted for.   (*Adams* v. *Betz*, 1 Watts, 428; 2 Cow. & Hill's Notes to Phil. Ev. note 376, p. 352.)

All the evidence in the case having any supposed bearing upon the existence or contents of such petition, is the testimony of the witness Blood, and the entries made in a book termed the " Clerk's Account Book."

The testimony of Blood is incompetent.   He does not know, or state, or pretend to recollect the particular contents of the document which he conceives to have been a petition for probate of the will, but only testifies as to the general character, scope, or object of the paper, and that too in a suppositious way.   He is not shown to

be a lawyer or an expert, or to possess any particular intelligence on such subjects, and cannot therefore in this general way prove either the character or contents of the document assumed to be lost.    (*Posten* v. *Rassette*, 5 Cal. 467.)

Records are of the highest species of evidence, and when duly authenticated as such, commonly import verity, and require no further proof.    Greater particularity, therefore, in the proof of lost records and their contents is required than in the case of private writings.    And in Phillips on Evidence with Cowen & Hill's notes, many authorities bearing upon this subject are referred to, coupled with the remark : " Such secondary proofs should be received with very great caution.    In this all the numerous authorities cited agree."    (2 Cowen & Hill's Notes to Phil. Ev. 64, 352.)

A certain entry in a book called " An Account Book," it has been urged by the opposing counsel, constitutes some evidence from which it may be inferred a petition for admission of the will to probate was filed.

It would seem to be an anomaly to call this book a record of the Court, proving itself without further evidence of its authenticity or correctness, and without even a certificate to that effect, and to admit it as evidence that an important paper, the foundation of the jurisdiction of the Court, was filed in the cause ; a book which is but a mere rough memorandum kept by the Clerks, mainly for the purpose of guiding them in the collection of their fees.    And, it is going still further, to say that such a book shall be evidence of the character and contents of the paper filed.    As a private memorandum, it is, of course, inadmissible, being unsupported by an oath.

II.    The Probate Courts of this State are Courts of inferior jurisdiction.    (*Smith* v. *Andrews*, 6 Cal. 652 ; *Beckett* v. *Selover*, 7 Id. 215 ; *Haynes* v. *Meeks*, 10 Id. 110 ;  *Clark* v. *Perry*, 5 Id. 60 ; *Head* v. *Sanford*, 5 Id. 268 ; *Townsend* v. *Gordon*, 19 Id. 188.)

The Act of 1858, changing the rules of construction of the proceedings of these Courts, has no application to proceedings taken before its passage.    (Statutes of 1858, 95 ; *per curiam* in *Townsend* v. *Gordon*, supra.)

The jurisdiction of such Courts will not be presumed, it must be affirmatively shown both in pleadings and proofs by any party relying upon the validity of any proceeding instituted therein. (*Townsend* v. *Gordon*, 19 Cal. 206 ; *Gregory* v. *McPherson*, 13 Id. 562 ; *Gregory* v. *Taber*, 19 Id. 397 ; *Bloom* v. *Burdick*, 1 Hill, 134 ; *Corwin* v. *Merritt*, 3 Barb. S. C. 341 ; *Schneider* v. *McFarland*, 2 Comst. 459 ; *People* v. *Corlies*, 1 Sandf. S. C. 247 ; *Mills* v. *Martin*, 19 John. 33 ; *Latham* v. *Edgerton*, 9 Cowen, 227 ; *Ford* v. *Walworth*, 15 Wend. 449 ; *Ford* v. *Babcock*, 1 Denio, 150 ; *Smith* v. *Rice*, 11 Mass. 507 ; *Bridge* v. *Ford*, 4 Id. 641 ; *Planters' Bank* v. *Johnson*, 7 S. & M. 449 ; *Wiley* v. *Wade*, 2 Stew. & Porter, 354 ; *Ventress* v. *Smith*, 10 Pet. 161 ; *Peacock* v. *Bell*, 1 Saunders, 73.)

III.   There is not only no petition, but no order of the Court appointing any time for proving the will and for parties to show cause why the will should not be admitted to probate, nor is there any order of notice.   There is no order of the Court whatever relating directly or indirectly to these matters, though expressly required by statute.   (Probate Act, Sec. 13.)

IV.   The first and only proceedings in Court having any reference to the probating of the will, were on the thirty-first of May, 1853, at which time the depositions of Lothrop, Burritt, and Blood were taken and filed, but no notice was given for that day ; nor then, nor at any other time, were subpenas or citations issued or made returnable, nor were any absent interested persons or infant heirs represented, contrary to the express provisions of the statute. (Probate Act, Secs. 16–18.)

It was strictly an *ex parte* affair.   No proceedings of a Star Chamber Court could apparently have been sprung more suddenly or conducted with greater privacy.   Indeed, up to the time of taking action on the petition of the appellant in the present year, no guardian was ever appointed to appear for the infant heirs of the deceased.   Their existence seems to have been ignored, except that they are named as devisees in the will, and are mentioned with the particulars of their names, ages, and residence in the petition of Blood, as Executor, for license to sell the real estate.   Not even then, however, was any person appointed to represent them.

V.   There was no order or action of the Court at any time admitting the will to probate.   The order of thirty-first May, 1853, for letters testamentary to issue to Blood, sets forth by way of recital only, that I. M. Blood has by the testimony of certain witnesses proved the execution of the will.   This evidently is the order which the Clerk in his account book or register, under date of May 31st, terms " order for probate of will." It is incompetent to establish the action of the Court in a proceeding of this character by mere recital in an order relating to a different subject matter. (*Sibley* v. *Waffle*, 2 E. D. Smith, 180.)

A recital in a Surrogate's order of sale, that an account of the personal estate and the debts was presented, is insufficient to establish that fact and give the Court jurisdiction.   It must be affirmatively shown.   (*Ford* v. *Walsworth*, 15 Wend. 449.)

The findings and certificate of proof under the seal of the Court, signed by the Judge, and recorded as required by statute, are in such a proceeding equivalent to a decree or judgment, and are herein wholly wanting.

When a decree is required by statute, an order setting forth the facts which would justify the decree is insufficient.   The decree cannot be presumed from the order.   (*People* v. *Barnes*, 12 Wend. 494.)

However, the order in itself, aside from the foregoing objections, is of but little moment.   It merely purports to show a recognition by the Court that the execution of the will was proved.   There are many other elements which go to constitute or authorize the admission of a will to probate, viz.: the important jurisdictional facts of the death and last residence of the testator, also his sanity, freedom from undue influence, and the condition of the estate.

Such action of the Court as is incidentally expressed in the above order cannot be construed as an admission of the will to probate.

VI.   Assuming that the first point (viz.: that for want of a petition the Probate Court had no jurisdiction over the proceeding) is not well taken, the opposing counsel contends that the Probate Court having once acquired jurisdiction, the subsequent irregularities are cured under the maxim of *omnia rite actua presumuntur esse*.

It seems to me that it would be a most remarkable stretch of this principle, such as no other Court ever indulged in before, to cover the numerous and vital deficiencies which exist in these proceedings with the mantle of this old law maxim.

But in addition to what has been urged in the consideration of each defect or irregularity by itself, I would say generally that regularity of proceedings cannot be presumed in this instance.

1. Because Probate Courts are Courts of inferior and special jurisdiction, in the exercise of which they are hedged in and circumscribed by statutory enactments, by which they are governed and to which it must be affirmatively shown that they have conformed, and in this rule the numerous authorities hereinbefore cited concur. This rule is founded upon the highest considerations of public policy and necessity, and is intended for the protection of those who most need protection.

2. Because there is in this matter no judgment or decree, or its equivalent, viz.: the certificate of proofs and findings of the Court on which to base the presumption of the regularity of prior proceedings. It is a matter seemingly without either legitimate beginning or end.

3. Because this is a direct and not a collateral impeachment of the regularity of the different proceedings, and all the authorities above cited are unanimous in the case of a direct attack and apply *a fortiori*.

4. Because these proceedings being on the face of them *ex parte* and without notice, are peculiarly liable to suspicion of fraud, or, at least, an invasion of the rights of absent parties, and in such case the maxim of *omnia presumuntur*, etc., would never be applied.

There exist no special reasons in this case for allowing latitude in the doctrine of presumptions. It is not in evidence, nor is it pretended that the papers of the Probate Court have ever been destroyed by fire or otherwise, or have been lost or purloined. On the contrary, the Clerk's register or account book, if the same be admitted in evidence, shows that every order has been entered or filed under its date, that no proceedings have been had, other than those which appear in evidence, that nothing is missing except one single paper, viz.: the petition for letters of special administration.

VII.   There is no certificate of proof and findings signed by the Probate Judge and attested by the seal of the Court, and attached to the will as required by statute (Probate Act, Sec. 24), nor is there any certificate whatever among the papers of the case. Neither is there any record of the will with the certificate of proof, etc., as required by statute.   (Probate Act, Sec. 25.)

The want of these requisites is fatal.   The statute must be complied with.   Unquestionably the act not only requires this evidence of the admission of a will to probate, but excludes all other.   So it has been distinctly held by this Court.   (*Castro* v. *Richardson*, 18 Cal. 478; *Adams* v. *Lansing*, 17 Id. 635—the numerous authorities cited by Patterson & Stowe for appellants; *Rodgers* v. *Jackson*, 19 Wend. 388.)

The only adverse authority cited by the opposing counsel, in the argument before the Court, was the case of *Dennison* v. *Ingraham*, in Dallam's Digest of Laws of Texas, to the effect that the granting of letters testamentary was sufficient proof of the probate of a will.   This cannot be law.   If it is, some better authority can be found than a Texan decision of so early a date as to be anterior to the era of regular reports in that State, and perhaps to the organization there of any permanent or enlightened social system.   Besides, by reference to the same digest of Texan laws, it will be found that there was in that State no such Probate Act as that of California.

The infant heirs represented by the appellant have a peculiar right to demand a probate of the will sufficient to admit it in evidence in any Court under the rule laid down in *Castro* v. *Richardson*, *supra*, so that they may be enabled to assert their rights to the land in an action of ejectment, and by introducing the record of the will with the proper certificate of probate and the proofs annexed, to deraign title under it.

*John W. Dwinelle* and *H. P. Hepburn*, for Respondents.

I.   The proceedings of the Probate Court, as proved in the Court below, on this application, show that the will of Preston Warfield was duly admitted to probate in the year 1853.

II.   It having been shown that the first petition made to the

Probate Court and certain other papers had been lost, it was competent to prove their contents by parol testimony. And it being proved that those papers were drawn by expert and competent persons, it will be presumed that they contained all that was necessary to effectuate their purpose.

These propositions are stated together, because many of the authorities cited below sustain them both. The following cases sustain the proposition that the contents of lost records may be proved by parol: (*Donaldson* v. *Winter*, 1 Mill. Lou. 137 ; *Jackson* v. *Cullum*, 2 Blackf. 228 ; *Newcomb* v. *Drummond*, 4 Leigh. 57, 60 ; *Adams* v. *Betz*, 1 Watt's, 427, 428 ; *Ames* v. *Hoy*, 12 Cal. 11 ; *Collier* v. *Corbett*, 15 Id. 183 ; *Posten* v. *Rassette*, 5 Id. 457, 469 ; *Jackson* v. *Crawfords*, 12 Wend. 533.)

III. The book kept by the Clerk of the Probate Court, and called " Account Book," was properly introduced in evidence to prove the loss of the petition, and to evidence other proceedings.

This is the book required to be kept by the laws of 1850, page 261, Sec. 8, which provide that " he shall keep in each of said Courts [of which he is Clerk] a docket, in which shall be entered the title of each cause, with the date of its commencement, a memorandum of every subsequent proceeding in said cause, with the date thereof, and a list of all the fees charged in the cause." The purpose of keeping such a book must be presumed to be that of furnishing testimony, and the grade of that testimony would depend upon the fact to be established. It would probably constitute primary evidence of the payment of fees ; and, certainly, is good secondary evidence to prove the filing of a petition which has been lost. (*Hazard* v. *Martin*, 2 Vt. at foot of the page.)

Even though this book had not been required by an express statute to be kept, it seems that being a register of official acts done by the officer, kept by his direction, and handed over by each officer to his successor as belonging to the office, it would on that ground alone be admissible in evidence. (*Kyburg* v. *Perkins*, 6 Cal. 674 ; 1 Green. Ev. Sec. 496.)

IV. Jurisdiction having been shown to have been acquired by the Probate Court over a particular case, it is then to be presumed that the Court acted thereafter regularly within its jurisdiction. (1 Saund. 92, N. 2 ; *Mills* v. *Martin*, 19 Johns. 33–35.)

This is a rule of evidence as well as of pleading; because, although the presumption, *omnia rite acta præsumuntur esse*, does not apply to the facts which give jurisdiction to an inferior Court, (*Rex* v. *All Saints*, 1 Mann. & Ryl. 668), yet when jurisdiction is once shown to have attached to an inferior tribunal, it will be presumed that it acted regularly within its jurisdiction.   (Broom's Legal Maxims, Tit. Omnia rite, etc., *428, 431, and cases cited; 1 McKinley & Lescure's Law Library; *Moravia* v. *Sloper*, Willes, 39; *Sollers* v. *Lawrence*, Id. 199; *Thompson* v. *Tolmie*, 2 Pet. 157, 163; *Jackson* v. *Robinson*, 4 Wend. 436; 12 Id. 553; *Voorhies* v. *Bank of United States*, 10 Pet. 449, 474; *In the matter of Prime*, 1 Barb. S. C. 340; *Schuylkill Falls Road*, 2 Bin. 250; *Buell* v. *Trustees of Lockport*, 8 N. Y. 58, and cases there cited; 11 Barb. 602; *Mills* v. *Martin*, 19 Johns. 35.)

The case of *Sibley* v. *Waffle* (2 N. Y. 180), does not conflict with the proposition established by the above authorities, for that was a case in which it was proved affirmatively that an order or publication which was actually made had not been complied with.

And whether the Probate Court, after having acquired jurisdiction, acted regularly or not, its proceedings cannot be attacked collaterally; that is to say, until they are reversed directly, upon error or appeal, they are valid and conclusive as to everybody.

This is what the cases mean when they say that such proceedings shall not be questioned collaterally or indirectly.   (*Stearns* v. *Aguirre*, 7 Cal. 448; *Irwin* v. *Scriber*, 18 Id. 499; *Cloud* v. *El Dorado*, 12 Id. 133; *Reynolds* v. *Harris*, 14 Id. 678; *Voorhies* v. *Bank of the United States*, 10 Pet. 449; *Bush* v. *Sheldon*, 1 Day, 170; *McPherson* v. *Canliff*, 11 Serg. & Rawle, 422, 429; *Groff* v. *Groff*, 14 Id. 181, 184; *McCombs* v. *Dunbar*, 1 Mill. Lou. 18, 21; *Jackson* v. *Crawfords*, 12 Wend. 533; *Perkins* v. *Warfield*, 11 Mass. 227; *Brown* v. *Lanman*, 1 Conn. 467; *Rils* v. *Questi*, 1 Mill. Lou. 249; *Mills* v. *Martin*, 19 Johns. 34, 35; *Wise* v. *Witters*, 3 Cranch, 331; *Jones* v. *Reed*, 1 Johns. Cas. 20.)

V.   Secs. 24, 25, and 26 of the Probate Act, providing for a certificate of the proof of a will by the Probate Judge, do not require a compliance with their provisions in order to make the probate effectual, but were enacted for the sole purpose of simplifying the proofs when needed in other Courts.

The object of these three sections is to make the exemplification of a probate once had and recorded in a particular manner a substitute for the production of the original will, and a trial of the question of its validity in every case in which those facts become material. These sections are merely directory. A compliance with them is nowhere required as a condition precedent to the issue of letters testamentary. On the contrary, such letters are by Sec. 41 of the Probate Act ordered to issue so soon as "the will is proved and allowed," while Secs. 50 and 51, prescribing the form of letters testamentary, cause them to recite as follows: "The last will of A. B., deceased, a copy of which is hereto annexed, having been proved and recorded in the Probate Court," etc. The utmost that can be inferred from these provisions is that the will must be " proved and allowed " and "recorded," before letters testamentary can issue upon it. There is no condition precedent of making a certificate of proof, nor does any such certificate accompany the will attached to the letters testamentary. For that purpose the letters themselves constitute a sufficient certificate.

In the case at bar the adjudication in the minutes, that the petitioner " comes and proves the execution of the will of deceased now of record," although inartificially expressed, yet logically includes everything necessary to the validity of the will, and is a judgment of the Court to the effect that the will is " proved and allowed," so as to authorize the further order which follows " that letters testamentary issue " in compliance with the same section. (Laws 1851, 452, Sec. 41.)

In *Jackson* v. *Young* (5 Cow. 269) it was held that a failure by the Sheriff to file a certificate of the sale of lands made by him under execution did not vitiate the title of the purchaser, although the statute required him to file such a certificate in the Clerk's office. A statute of New York requires a newly elected Sheriff, within twenty days after he receives notice of his election and before he enters upon the duties of his office, to execute a sufficient bond with sureties, etc.; but in *The People* v. *Holley* (12 Wend. 481) these provisions were held to be merely directory.

It appears from the transcript that from the organization of the Probate Court of San Francisco County, in 1850 up to 1855, no

certificate of probate was ever made, attached to any will, or recorded. This fact was introduced into the record as evidence of the construction put upon the Probate Act by usage, and by cotemporaneous exposition. "Great regard," says Lord Coke, "ought, in construing a statute, to be paid to the construction which the sages of the law who lived about the time, or soon after it was made, put upon it, because they were best able to judge of the intention of the makers at the time when the law was made." (2 Inst. 11, 136, 181.) Hence the maxim: *contemporanea expositio est optima et fortissima in lege.* (Broom's Legal Maxims, *300.) The following cases attribute the highest character to a cotemporary interpretation of this kind: *Stuart* v. *Laird* (1 Cranch, 299) ; *Panaud* v. *Jones* (1 Cal. 499), and cases there cited ; *Rogers* v. *Goodwin* (2 Mass. 477, 478) ; *Bank of Utica* v. *Merseran* (3 Barb. Ch. 528, 576) ; *Leggett* v. *Rogers* (9 Barb. S. C. 414) ; *Hazard* v. *Martin* (2 Ver. 84), at the foot of the page, is precisely in point.

VI. After a long lapse of time, or under other circumstances which raise a presumption of the loss of papers or the failure of testimony, the jurisdiction of an inferior Court may be presumed "*a posteriori*" from its final decrees.

It seems reasonable that the same presumptions which are resorted to in order to sustain acts *in pais*, should be available to sustain the proceedings of Courts. Thus, presumption of title is resorted to in order to sustain a party who has had long continued possession of lands. (*Beall's Lessee* v. *Lynn*, 6 Harr. & Johns. 361.) And under the same circumstances, on an attempt to connect a possession with title, a defective and void deed was given in evidence and rejected, and yet a good deed was presumed. (*Gitting's Lessee* v. *Hall*, 1 Id. 14, 18.) So the fulfillment of a condition precedent to the execution of a power of attorney has been presumed (*McConnell* v. *Bowdry's heirs*, 4 Monroe, 395) ; a power of attorney preceding the execution of a deed by one assuming to act as attorney (*Buhols* v. *Boudousquie*, 6 Mart. La. [N. S.] 153 ; *Clinton* v. *Campbell*, 10 Johns. 475 ; *Wickham* v. *Belknap*, 12 Id. 96) ; that the requisite oath was taken, and notices of sale posted by an administrator selling lands (*Gray* v. *Gardner*,

3 Mass. 399); that an executor's sale was regular after a long acquiescence (*Knox* v. *Jenks,* 7 Id. 488); that tax bills, valuations, warrants, etc., were regular in order to sustain tax sales (*Coleman* v. *Anderson,* 10 Id. 105; *Pejebscut Proprietors* v. *Ransom,* 14 Id. 145, 146); that notices of the sale of lands under a power in a mortgage were regularly posted (*Bergen* v. *Bennett,* 1 Caines' Cases, 1, 18); a previous lease to support a release (*Minister, etc., of Schenectady* v. *Veeder,* 4 Wend. 494); a release after a lease and long possession (*Springstead* v. *Schemerhorn,* 12 Johns. 357, 362); an oath of capacity to hold lands taken by an alien (*Blight's Lessee* v. *Rochester,* 7 Wheat. 546); the posting of affidavits and regularity of a corporation meeting (*Society for Propagating the Gospel* v. *Young,* 2 N. H. 310, 313); an abandonment of real estate after a tax sale (*Pejebscut Proprietors* v. *Ransom,* 17 Serg. & Rawle, 350); the due execution of a will forty years old, although one of the witnesses was living and within the jurisdiction of the Court (*Jackson* v. *Christman,* 4 Wend. 478); and finally, an order directing the sale of lands by an administrator (*Hazard* v. *Martin,* 2 Ver. 77, 85).

NORTON, J. delivered the opinion of the Court—COPE, J. concurring.

The minor children of Preston Warfield, by their guardian, presented to the Probate Court a petition setting forth the death of said Warfield, and that his last will was on file in said Court; that as appears by the files and records of the Court, certain proceedings were once instituted therein as if toward and preliminary to the probate of said will, and that on the thirty-first day of May, 1853, the testimony of a subscribing witness touching the execution of the will, and of other witnesses touching the residence, decease, and estate, were reduced to writing, subscribed and sworn to, and that on the same day it was ordered by the Court that letters testamentary on the said estate issue to the executor named in said will, which letters were subsequently revoked on account of the negligence and misfeasance of said executor. The petition then sets forth various irregularities and defects in said proceedings, the most important of which are the allegations that no petition for the pro-

bate of the will was presented to the Court, and no order made admitting the will to probate, or any certificate of proof made or attached to the will. The petition then prays that said proceedings may be adjudged to be null and void, and that the will be produced by the Clerk and be admitted to probate.

Lewis E. Morgan presented a petition to the Probate Court asking leave to intervene in this proceeding for his interest, alleging that under an executor's sale heretofore made he became the purchaser of certain real estate, which sale was confirmed by the Court on the twenty-fourth day of September, 1853, pursuant to which sale he received a deed and entered into possession of the land, and is now in possession of the same. He was allowed to intervene.

After hearing the proofs of the parties the Probate Court made an order denying the prayer of the petition of said minor children. From this order said petitioners have appealed.

Whether the decision of the Probate Court was correct or erroneous depends upon the fact whether or not the will of the deceased had been previously probated.

If the Probate Court in the proceedings formerly had in relation to this will acquired jurisdiction of a proceeding to probate the will by the presentation to it of a proper petition for that purpose, and the publication of notice of the time of proving the will, and did afterwards in such proceeding admit the will to probate, that determination was final except upon a direct proceeding by appeal or otherwise to reverse it, and cannot be questioned in any collateral proceeding. (*Elliott* v. *Piersot*, 1 Pet. 328; *Thompson* v. *Tolmie*, 2 Id. 157; *Voorhies* v. *Bank U. S.*, 10 Id. 449; *Jackson* v. *Cronfords*, 12 Wend. 533.)

Although the petition in this case contains a prayer that the former proceedings may be adjudged void, this is not a direct proceeding to set aside a probate of the will. The object of the present proceeding is to have the will admitted to probate upon the assumption that it has never been probated, and not to set aside a probate of the will for defects or irregularities in the proceedings. Whether the will has been heretofore probated is a question collateral to the petitioners' right to have it now probated in the present

proceeding the same as it would be if the heir should have brought an action of ejectment against the person holding under the executor's sale of the real estate. The plaintiff in such an action could not render it a direct proceeding to revoke the probate by alleging that the proceedings to probate the will, under which the defendant claimed to hold, were irregular and void.

The first question, then, to be considered, is whether a sufficient petition for the probate of the will was presented to the Court in the former proceedings. Such a petition is not now among the papers on file in the Probate Court. If it was presented it has been lost or destroyed or abstracted. For the proof of such a petition having been presented the intervenor has resorted to secondary evidence. The existence and contents of a record or other document to show the regularity of legal proceedings may, if the original be lost or destroyed, be shown by secondary evidence the same as in regard to any other lost instrument. (*Jackson* v. *Cullum*, 2 Blackf. 228; *Newcomb* v. *Drummond*, 4 Leigh. 57; *Jackson* v. *Crawford*, 12 Wend. 533; *Ames* v. *Hoy*, 12 Cal. 11.) The secondary proof offered consists principally of an order entered in the minutes of the Probate Court under date of April 15th, 1853, of certain entries of the same date in an "account book" kept by the Clerk of said Court, an affidavit of the publication of a notice or order, with a copy of the order annexed, and the testimony of the executor named in the will. The order referred to is in the following words:

"In the matter of the last will and testament of Preston Warfield, deceased.—Order for issuance of letters of special administration.

"On filing the will of deceased, and on petition of Ivory M. Blood, it is ordered by the Court that letters of special administration do issue to said Blood, on filing a bond in the sum of $1,500; and it is further ordered that notice be given to all persons interested to come forward at the Court room on Saturday, thirtieth April, 1855, at 10, A. M., and show cause, if any they have, why letters of general administration should not issue to the said executor."

The entry in the account book is, with other items, as follows:

"Preston Warfield, 276. Ivory M. Blood, Executor.

"1853—April 15—Will and petition filed for special administration.   Filing and Certificate, 3 ;  Order, 1;  Filing, etc., 1 50 ; $5 50.

"Dft. no. for pub., 3."

The copy of notice or order annexed to the affidavit of publication was as follows :

"State of California, County of San Francisco, Probate Court.— Notice is hereby given to all persons interested in the estate of Preston Warfield, late of the City of San Francisco, deceased, to show cause, if any they have, on Saturday, the twenty-ninth day of April instant, at ten o'clock, A. M., at the Court room of the Probate Court, in the City Hall, in the City of San Francisco, why the last will and testament of said Warfield should not be admitted to probate, and letters testamentary issued to Ivory M. Blood, who is named in the said will as the executor thereof.   Witness, Honorable Alexander Campbell, Probate Judge, this sixteenth day of April, A. D. 1853.

"Attest:                           JAMES E. WAINWRIGHT, Clerk.
                          "O. BAILEY, Deputy Clerk.
Indorsed "Filed May 31, 1853."

The witness Blood testifies that he took the will to the Probate Court and deposited it with the Clerk, and then adds: "I think there was a petition for probate of the will.   Messrs. Burritt & Gorham drew one up and I swore to it before the Clerk.   I got Messrs. Burritt & Gorham, attorneys, to conduct proceedings to have the will probated.   I came here into Court and swore to this petition.   I think it was left here, but cannot tell what else it contained, but the object was to have the will probated."   Upon cross-examination, he said : "Why I think the petition I have mentioned was for probate of the will is because I was at considerable trouble to ascertain the names, ages and residence of the widow and heirs which Burritt & Gorham said it was necessary to state in the petition.   I do not remember about more than one petition."   The will itself is found in the Probate Clerk's office, indorsed "Filed April 15th, 1853."

No evidence is given by either party that there is any petition on file in the Probate Court Clerk's office, which could be the one

referred to in the above mentioned order and entry in the account book.

These proofs are sufficient to show that a petition relating to the estate of the deceased was presented to the Probate Court on the fifteenth day of April, 1853, and we think they also show that the petition was for a probate of the will as well as for letters of special administration. The executor, Blood, testifies that he employed a firm of lawyers " to conduct proceedings to have the will probated." They required him to furnish certain information as to the names, ages, and residence of the heirs which was appropriate to be inserted in a petition for that purpose, but immaterial in one for letters of special administration. They prepared a petition, which he swore to before the Clerk of the Probate Court. The will was filed in the Probate Court on the same day with this petition. The law (Stat. 1851, 449, Secs. 5, 6) requires the executor to present the will to the Probate Court, and *requires* that if he intends to accept he shall present *with* the will a petition praying that the will be admitted to probate and that letters testamentary be issued to him. On the same day an order is entered, setting forth that on filing the will of deceased, and on petition of Ivory M. Blood (who was the executor named in the will) two things are ordered : first, that special letters issue ; and, secondly, that notice be given to show cause why letters of general administration should not issue to the said executor. The filing of the will and the petition of the executor are stated as the grounds for making each of these orders. In effect the order states that the petition prayed that notice be given to show cause why general letters of administration should not be issued to the executor. But, as we have seen, the petition for general letters is required to be presented in connection with the petition for probate of the will. Such letters to the executor only issue upon, and as a consequence of the probate of the will. (Stat. 1851, 452, Sec. 41.) Notice of probating the will is required to be given (Sec. 13), but no notice is required specifically of application for letters. They issue, as above stated, as the consequence of the probate of the will. A notice of probating the will involves a notice that letters will issue upon the probate to the executor. We are not now considering

In Matter of Will of Warfield.

what is the exact legal effect or meaning of this order, but what it indicates was the prayer of the petition. That the clerk who entered this order was more likely to have employed a brief expression, which he deemed the equivalent of the prayer of the petition, rather than that the lawyers who drew the petition should have omitted the prayer for the principal thing required by the law, and only inserted the prayer for the incident, is indicated by the circumstance that the clerk, in the title of this order, denominates it only as an order for the issuance of special letters of administration, when the order itself shows that it was also for the more important purpose of obtaining general letters. This circumstance is also applicable as explanatory of the brief entry in the account book: "Will and petition filed for special administration." Sufficient only was stated to identify the order, rather than to show its whole contents. In connection with this entry, and of the same date, is the entry: "Dft. no. for pub." But no notice was necessary on an application for special letters only. (Secs. 88, 89.) There is then found in the Clerk's office of the Probate Court, an affidavit of publication of a notice filed on the thirty-first day of May, 1853. The notice is dated the next day after the filing of the petition and the entering of said order for publication; and the notice requires cause to be shown at the same time and place specified in that order; and the cause to be shown is, "why the last will and testament of said Warfield should not be admitted to probate, and letters testamentary issue to Ivory M. Blood, who is named in the said will as the executor thereof." This is evidently a copy of the notice specified in the order and referred to in the abbreviated entry in the account book, and being found filed in proceedings in the case may be properly considered as secondary evidence in determining the character of the petition which was filed. It was a notice of the probate of the will issued upon the filing of the will and a petition of the executor in the Probate Court. Considering what the law required an executor to do upon presenting a will to the Probate Court, that the executor employed lawyers (who should be presumed to know the law) to conduct proceedings to have the will probated, and the foregoing evidence of what was done, we think it was proved that the petition filed on

the fifteenth day of April, 1853, was for probate of the will and for general letters of administration, as well as for letters of special administration.

It was proved that of the lawyers who drew the petition, and who are the only persons who would be likely to remember accurately its contents, one is dead and the other out of the State. Under these circumstances, when it is considered that it was proved that it was the object of the petition to procure the probate of the will, that the testator was dead when the petition was presented, and that he resided in the County of San Francisco at the time of his death, and that the petition was drawn by lawyers whose business it was to prepare such papers and to know what they should contain, and that the petition was presented to the Court which was authorized to take jurisdiction of the matter in case the existing facts were stated, and that the Court did take such jurisdiction and take proof of the execution of the will and issue letters testamentary, and order and approve the sale of real estate by the executor, we think it should be presumed, after the lapse of eight years, in behalf of the regularity of the proceedings and on the facts proved, that the petition contained a statement of the necessary jurisdictional facts. (*Posten* v. *Rassette*, 5 Cal. 467 ; *Collier* v. *Corbett*, 15 Id. 183.)

Upon the filing of the petition the order above mentioned was entered, that notice be given to all persons interested to show cause why letters of general administration should not issue. The notice published was to show cause why the will should not be admitted to probate. To have been strictly in form the order should have fixed a time for the probate, and directed notice of that time to be published, and the notice published should have been of the time fixed for probating the will. But the order and notice, in the form in which they appear, were substantially equivalent to the order and notice prescribed by the statute. A notice was given, in effect, to all parties interested, of the time and place of probating the will. It does not appear that the will was probated on the day specified in the notice, nor that the probating was adjourned from that day to the day when it was in fact done. But this was, at most, an irregularity, occurring after jurisdiction had been acquired, and

could only be objected to on a direct proceeding to set aside the probate.

It might, perhaps, be claimed that the presentation of the will to the Probate Court, with a proper petition for the probate, was sufficient to give jurisdiction, and that thus all informalities and irregularities in fixing the time of probate, and in giving notice thereof, would fall within the class of subsequent errors which might render the proceedings voidable, but not void. This point, however, we do not find it necessary to decide.

Having concluded that the Probate Court acquired jurisdiction of the proceedings by the presentation to it of a proper petition for the probate of the will, and by publication of notice of the time fixed therefor, the next inquiry is, whether the will was in fact probated. It is objected that there is no judgment or decree, or its equivalent, of the probate. There is no provision in the statute which requires or contemplates that a formal judgment or decree that the will is admitted to probate, or is proved, should be entered. But Sec. 24 requires that if the Court be satisfied upon the proof taken that the will was duly executed, a certificate of the proof, signed by the Probate Judge and attested by the seal of the Court, shall be attached to the will; and by Sec. 25, the will and certificate of proof, together with the testimony which has been taken, are required to be filed and recorded. The certificate required by Sec. 24 was not made. Was it indispensable to render the proceedings a probate of the will? The actual probating of the will consists in taking the testimony of the witnesses to its due execution, and by Secs. 23 and 25, that testimony is required to be reduced to writing and signed by the witnesses, and filed and recorded with the will and certificate. The expression " a certificate of the proof," as used in Sec. 24, is ambiguous. It is not necessarily a certificate that the will was duly proved, but might be considered only a certificate of what proofs were taken. Still it is not to be made, unless the Court is satisfied that the will was duly executed and its absence unexplained, and especially, if no subsequent proceedings were taken in the case, as upon a probated will, might properly be considered as showing that, in the judgment of the Probate Court, the testimony did not prove the due execution

of the will. The testimony taken, and which was reduced to writing, and signed by the witnesses, and filed in the Probate Court Clerk's office, was the proper proof, and sufficient to prove the due execution of the will. On the same day it was taken an order was entered that letters testamentary issue, which order begins with this statement: "And now on this day Ivory M. Blood comes into Court, and on the testimony of L. L. Barrett and J. J. Lathrop, proves the execution of the will of deceased as now of record." This is a judgment entered in the minutes of the Court that the will is proved. Although not a formal and separate judgment of this one fact, but stated preliminarily to the order that letters issue, yet it is not in the form of a mere recital of what had been done, but is a direct statement that the executor now proves the execution of the will. On the same day letters testamentary were issued under the seal of the Court, by which, after reciting in the usual form of a recital that the "will having been proved and recorded in the Probate Court," etc., Ivory M. Blood is appointed executor. These facts abundantly show the understanding of the Court that the will was probated. It also appeared from an examination of the "Book of Wills" kept in the Probate Court that from the organization of the Court in 1850 to February 19th, 1855, seventy-eight wills were therein recorded, to none of which was any certificate of proof attached, and that no such certificate was found attached to any will before the date of May 21st, 1855. This is clear proof that it was the understanding of the Judges of the Probate Court at the time the proof of the execution of this will was taken, that such a certificate was not essential to a probate of a will. In the case of *Hazard* v. *Martin* (2 Vt. 77), in deciding as to the validity of a sale of real estate by an administration which was not ordered by the Surrogate Court, the Judge says: "The statute is so vague in its requisitions, were I sure there was a general understanding in the Probate Courts at that period that no such matters should exist or should appear of record, but that the administrator might deed without an order, I would not at this late day decide the titles void that were acquired under views of this kind entertained by those who then administered the laws, and for which titles a full and *bona fide* consideration was paid." To decide that the

want of the certificate in this case was a fatal defect in the evidence of the probate of the will would in effect declare void the probate of every will made in the County of San Francisco during the period of five years from the establishment of the Probate Court. We do not think we are required by the facts of this case or authorized so to decide. Courts feel themselves constrained to uphold, where it is possible, cotemporaneous interpretation of statutes, under which interpretation rights of property have for many years been acquired. (*Panaud* v. *Jones*, 1 Cal. 448, and cases cited at 499 ; *Rogers* v. *Goodwin*, 2 Mass. 477 ; see also *Stuart* v. *Laird*, 1 Cranch, 299.)

Our conclusion is, that the evidence shows that the will in question was duly probated before the institution of the present proceedings.

Various objections and exceptions were taken by the appellants to the admissibility of evidence, but they related mostly to the proof of facts bearing upon the regularity of proceedings subsequent to the presentation of the petition, and were immaterial in this collateral proceeding. The other proofs bearing upon the presentation and character of the petition, to which objections were taken, were admissible as scondary evidence.

The order appealed from is affirmed.